454 So.2d 93 (1984)
STATE of Louisiana
v.
Gerald C. NUCCIO.
No. 82-KA-1905.
Supreme Court of Louisiana.
June 25, 1984.
*96 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John F. Rowley, Dist. Atty., Paul J. Katz, Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
Richard A. Tonry, James W. Brodtmann, Tonry & Brodtmann, Chalmette, for defendant-appellant.
DIXON, Chief Justice.
Defendant, Gerald Nuccio, was indicted and convicted for armed robbery (R.S. 14:64). He was sentenced as a multiple offender to serve fifty years in the custody of the Department of Corrections, without benefit of probation, parole or suspension of sentence, to run concurrently with an earlier conviction, with credit for time served. From that conviction and sentence, defendant appeals. We affirm.
During the early morning of March 26, 1979, around 6:30 a.m., two men entered the small food store which was operated by Dennis Acosta. One of the men wore a reddish bandanna, and one was tall and had blondish hair; he was identified later as Paul Krolowitz.[1] The second man was shorter and had dark hair and a mustache. The taller man requested some matches from Acosta, and as Acosta was serving him, Krolowitz began beating the man with a .357 magnum revolver. Krolowitz shot the man in the knee, and then ordered the second man to take the cash drawer. The two robbers departed, leaving Acosta in a pool of blood.
Shortly thereafter, Mr. Kristoff, a frequent customer of the store, entered the store. Not seeing Acosta, he leaned over the counter and saw the old man beaten *97 and bloodied. He immediately called his work place and told them to call the police and an ambulance. He also notified the man's family. Mr. Kristoff then asked the victim what had happened. He testified:
"... he told me that two guys that came into the store; one a tall sandy blonde colored haired guy and the other one was shorter with darker hair and a mustache, and he told me they came in and ordered something from the store, a book of matches, and when he went to open the cash register to serve them the tall guy jumped over the counter and hit him in the head with a pistol and the other guy took the money. He told me that he also believed they had broken his leg or something because he couldn't move his leg."
Detective Stohlman, one of the first law enforcement officers to arrive at the scene, also spoke with the victim, and recounted a story similar to that recited by Mr. Kristoff.[2]
Mr. Acosta was rushed to the hospital where he received medical treatment. As part of that treatment, surgery was performed during which a part of a bullet was removed from his knee. It was only then that anybody realized that he had been shot, and that the assailants had not just broken his leg, as the victim had told the witnesses. Less than two weeks after the armed robbery, the victim died in the hospital.[3]
On the night of the robbery, Nuccio was arrested for an unrelated charge of possession of marijuana. At his booking for that charge, a reddish bandanna and a large quantity of coins were taken from Nuccio during the booking inventory search. These items were "seized" by the sheriff's office, and were not returned to Nuccio upon his release from jail.
On the evening of May 3, 1979, six weeks after the armed robbery, the St. Bernard Parish sheriff's office received several calls that there had been a shooting incident at a Meraux trailer park. In response to the calls, numerous officers went to the scene, including Deputies Bonura, Stohlman, Hernandez and Carreras. One of those arrested from the shooting incident was Juanita Tyson. Officer Stohlman, who earlier had responded to the Acosta robbery, overheard Ms. Tyson tell Officer Carerras that the gun from the shooting could be found in a certain trailer. Based on this information, that an instrumentality of a crime was located in the trailer, coupled with information in the possession of Deputy Bonura, a search warrant was issued; Deputies Stohlman and Bonura were the affiants on the warrant.
By authority of the warrant, the officers went into the trailer, later discovered to be Krolowitz's, and conducted a search of the premises. They found, hidden behind a heater, a .357 magnum revolver. They also found a reddish bandanna.
As a result of the shooting incident, Paul Krolowitz was arrested. Early the next morning Krolowitz made a statement to the sheriff's office in which he indicated that Gerald Nuccio had committed the Acosta robbery by himself and of his own volition. Krolowitz stated that he merely followed Nuccio's request to stop his car so that Nuccio could get some cigarettes and a soft drink, and that he, Krolowitz, was innocent of any intent to rob or injure anyone. Based on this statement, the sheriff's deputies went to Nuccio's father's trailer and, with guns drawn, awoke and arrested Nuccio. Before he had a chance to dress fully, he was taken to the parish jail. Within a short time after his arrival, Nuccio made a recorded statement in which he exculpated himself and inculpated Krolowitz.
Nuccio was indicted for the armed robbery. Prior to trial, numerous motions were filed on Nuccio's behalf; among them were motions to suppress tangible evidence and to suppress the recorded statement. After hearings, the trial judge denied the *98 motions, and allowed the evidence to be admitted. Writs were taken on these rulings, which were denied by this court. State v. Nuccio, 406 So.2d 597 (La.1981). At the trial, the defense again raised the issue of the admissibility of the taped confession. The defendant took the stand on his own behalf, primarily on the issue of whether or not he had freely and voluntarily made the confession. He testified that he had been beaten by two of the officers, and that he had been instructed by them as to what facts to recite in the recorded statement. The jury convicted Nuccio. A multiple offender bill was filed by the district attorney and, after a sentencing hearing, defendant was sentenced to fifty years at hard labor, without benefit of probation, parole or suspension of sentence. Defendant specified twenty-four errors, nine of which have been abandoned on appeal by failure to brief.
Argument No. 1
Defendant sought to suppress the evidence seized during the warranted search of Paul Krolowitz's trailer. During the investigation of the trailer park shooting incident, two of the deputies received information which they believed supported the issuance of a search warrant to search Krolowitz's trailer. They completed an affidavit, and the search warrant was issued. Pursuant to the search, the officers found the gun which was used in the shooting incident, and which later was shown to have been the gun used in the Acosta armed robbery. Defendant alleges that the search warrant was invalid because the affidavit failed to establish that there was probable cause that the gun was located in the trailer. This identical issue, involving the same affidavit and search warrant, was raised in State v. Krolowitz, 407 So.2d 1175, 1177-79 (La.1981). In that case this court purged the affidavit of inaccurate statements (which the court found to be unintentional), and found that the affidavit, as modified, supported a finding of probable cause that the gun was in the trailer. For the reasons set forth in the Krolowitz opinion, we again uphold the validity of the search warrant and the introduction into evidence of the materials seized pursuant thereto.
Assignment of Error No. 1 is without merit.
Argument No. 2
Defendant sought to suppress the introduction of the coins and bandanna which were taken from him during his March 26 booking for possession of marijuana. Defendant argues that the items should have been returned to him upon his release from jail, two days after his arrest, and that the items, while being held during his detention, should have been treated not as evidence seized without probable cause, but only as personal effects taken in the booking.
On the evening of the Acosta armed robbery, defendant was arrested for possession of marijuana. Officer Carreras, one of the arresting officers, made it known at the marijuana booking that he wanted to keep the large quantity of coins and the bandanna which were taken from Nuccio. He stated that he wanted to keep the items as possible evidence in the Acosta robbery. Carreras also testified that the sheriff's office did not consider Nuccio to be a suspect in the robbery, nor did they have probable cause for his arrest in connection with that crime; it was only after Krolowitz made his statement in early May that the police had such probable cause.
The right of the police to conduct a personal effects inventory search at the time of an arrested person's booking is a recognized exception to the search warrant requirement. C.Cr.P. 228; United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); State v. Duplantis, 388 So.2d 751 (La.1980). Furthermore, this court has recognized the right of the police to seize items of evidence which become exposed during a booking inventory search. State v. Bryant, 325 So.2d 255, 257-59 (La.1976). In Bryant we held that once a person has been "lawfully deprived of the possession of ... [his property], and the custody and control of ... [the] object[s] was legitimately under the dominion of the *99 police, it was not an unreasonable search and seizure for the police to use it as evidence of another crime."
The police may not, however, seize any item that they choose. The item seized must be contraband, an instrumentality of the crime, C.Cr.P. 161(2), a fruit of the crime, C.Cr.P. 161(1), or, since Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), evidence of a crime. See also C.Cr.P. 161(3); State v. Cardinale, 251 La. 827, 206 So.2d 510 (1968). The propriety of the seizure of the coins and bandanna, then, can be upheld if they constitute "evidence" of the armed robbery or some other crime.
In order for the seizure of a thing to be upheld as constitutional, there must be a showing of probable cause that the thing seized is somehow related to a particular crime. The United States Supreme Court in Warden, Maryland Penitentiary v. Hayden, supra, 387 U.S., at 307, 87 S.Ct. at 1650, stated that:
"... there must, of course, be a nexus automatically provided in the case of fruits, instrumentalities or contraband between the item to be seized and criminal behavior. Thus in the case of `mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction."
The seizure of property, in light of Hayden, must be supported by a finding that the thing probably will lead to an arrest or conviction of a person for a particular crime.
Both "mere evidence," the bandanna, and alleged fruits of the crime, the large quantity of coins, were seized from Nuccio at his marijuana booking. At the time of the booking, the police already had a version of what had happened at the Acosta grocery: a man wearing a reddish bandanna stole some money, which probably contained a large amount of loose change. It was reasonable for the police officer to conclude that, while he could not be certain that Nuccio was one of the armed robbers, there was a possibility that the bandanna and the unusually large quantity of coins would, eventually, lead to an apprehension or conviction of some person. The evidence alone was too circumstantial to support a finding of probable cause to arrest Nuccio, but, under the Hayden test, there was probable cause for the police to believe that the items eventually would lead to an arrest or conviction. The coins and the bandanna were not seized and retained unlawfully.
Defendant, however, maintains that their introduction into evidence was improper. This claim is based on alleged defects in the chain of custody or proof that the coins were the actual ones taken during the robbery.
In order for the evidence to be admitted, the state needs to show that the evidence is, more likely than not, related to the case. State v. Drew, 360 So.2d 500, 518-19 (La.1978). "... Lack of positive identification goes to the weight of the evidence rather than to its admissibility...." In the present case the state proved that the items taken from the defendant on the night of the armed robbery were, more likely than not, connected to the armed robbery. The introduction of the seized items was proper, and the weight to be given to that evidence was a matter properly for the jury.
Assignments of Error Nos. 2 and 15 are without merit.
Argument No. 3
Defendant sought to suppress his confession, alleging that it was obtained through force or coercion, or was otherwise involuntary. He claimed that he was threatened and beaten by two sheriff's deputies, that he did not waive his rights, and that his request to have an attorney was ignored.
Shortly after Krolowitz gave his statement, the officers went to Nuccio's residence and arrested him. At 9:00 a.m., May 3, Nuccio gave his statement in which he stated that Krolowitz was the trigger man, and that he, Nuccio, merely took the cash *100 drawer from Acosta's cash register in response to Krolowitz's commands. The state sought to introduce the confession, and the judge, after a hearing on a motion to suppress, allowed the introduction of the confession.
Whenever the state seeks to admit a confession, the state must prove that it was freely and voluntarily given, and that no threats or promises were made to induce the defendant into giving the statement. R.S. 15:451. The state must prove this beyond a reasonable doubt. State v. Davis, 380 So.2d 607, 609 (La.1980). Whenever the defendant makes specific allegations of coercion or abuse, the state must affirmatively rebut each of those allegations. Id. at 610. In Davis, this court quoted and applied the test established in State v. Honeycutt, 216 La. 610, 616, 44 So.2d 313, 315 (1950):
"... it [is] incumbent upon the State to call other witnesses to corroborate the testimony of the deputy who took the confession and to rebut defendant's own testimony with reference to his mistreatment. The State [should call] for this purpose some or all of the ... other officers who were with the deputy and the prisoner ..."
When the defendant makes specific allegations of abuse, it is not enough for the state to call only the deputy who is alleged to have committed the acts against the defendant, but the state must call enough other witnesses to overcome, beyond a reasonable doubt, the defendant's claims. The determination of admissibility, however, is a matter for the trial judge and his conclusions will not be disturbed unless they are not supported by the evidence as a whole. State v. Burkhalter, 428 So.2d 449, 454-55 (La.1983).
The state rebutted, beyond a reasonable doubt, each of defendant's allegations of impediments to a finding that the confession was freely and voluntarily made. The state has shown that the statement was obtained properly, and that none of the defendant's rights were violated. Since the judge's rulings were supported by the evidence as a whole, his decision will not be overturned. State v. Burkhalter, supra.
The confession was obtained lawfully, defendant's constitutional rights were upheld, and the confession's admission into evidence was proper.
Assignments of Error Nos. 3, 4 and 5 are without merit.
Argument No. 4
Defendant contends that the trial court erroneously denied his motion in limine on the admissibility of evidence concerning the death of the robbery victim, and motions for mistrials made on the basis of remarks made both by Major Reichert under examination, and by the prosecutor during his closing argument, on the issue of defendant's arrest for murder.
Defendant filed a motion in limine which requested that there be a ruling as to the admissibility of any evidence relating to the death of the victim. It was argued that any such evidence was irrelevant, or, if relevant, its probative value was outweighed by its prejudicial effect. There is no indication in the record as to how the trial judge ruled on the motion, but according to defendant's brief, the ruling was adverse to him.
Evidence of the death of an armed robbery victim is always relevant to show that there had been the use of force. See State v. Matthews, 354 So.2d 552, 557 (La.1978). There has been no showing of an abuse by the trial judge of his broad discretion in finding the death of the victim to be relevant and evidence of the death to be admissible. The trial court's ruling on defendant's motion in limine, insofar as one was made, will not be overruled by this court.
Two motions for mistrials were made by defense counsel, relying on C.Cr.P. 770(2). Article 770 of the Code of Criminal Procedure provides:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the *101 jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

. . . . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial...."
Major Reichert testified that defendant had been arrested for armed robbery and for murder. Defense counsel objected to the reference to murder, and moved for a mistrial. The trial court denied the motion, but admonished the jury to disregard Reichert's comments on the murder. The witness compounded the problem, but the trial court again admonished the jury to disregard the witness' comment.[4] Defendant maintains that the comment by the police officer was a comment made by an officer of the court, and was a comment reprobated by C.Cr.P. 770(2), which requires a mandatory mistrial.
This court has held that a police officer's unsolicited, unresponsive reference to another crime alleged to have been committed by a defendant is not the comment of a court official under C.Cr.P. 770(2), but such an officer will be held to the same standard if his answers show a pattern of unresponsiveness or improper intent. State v. Harris, 383 So.2d 1, 9 (La.1980); State v. *102 Schwartz, 354 So.2d 1332, 1333 n. 2 (La. 1978); see also State v. Perry, 420 So.2d 139, 146 (La.1982) ("... neither a state witness nor a deputy sheriff is a `court official'; therefore, [C.Cr.P.] art. 770 does not apply....").
In the present case, there has been no showing that the remarks of Major Reichert were intentionally unresponsive or were otherwise intended to present improper evidence to the jury. Since Major Reichert's statements were not malicious or otherwise improperly intended, he will not be held to the same standard as other "court officials." Consequently, article 770(2) does not apply to his comments; a mandatory mistrial is not due.
The comment of a police officer, though, will be viewed with considerable concern as to its effect on the fairness of the trial, but the decision is initially within the sound discretion of the trial judge. State v. Douglas, 389 So.2d 1263, 1266 (La.1980). Absent a clear showing of abuse of the trial court's discretion, this court will not upset a trial court's ruling on the matter.
There has been no showing of abuse by the trial court of his broad discretion. The court was correct in admonishing the jury, and was within its discretion in denying the first motion for a mistrial based on the comments of Major Reichert. This issue is without merit.
Defendant's second motion for a mistrial on this subject was made during the district attorney's closing argument. During argument, the prosecutor made the following remarks:
"Now, what did Nuccio indicate that he was really afraid of? What did he indicate that he was really afraid of? He didn't say that Officer Carreras told him that if he didn't testify a particular way in that statement that Officer Carreras was going to beat him some more. He didn't say that. He didn't say that if he didn't testify in a particular way that Officer Papania was going to find out about it and beat him some more. He said that he thought that Officer Carreras was going to charge him with murder if didn't make that statement. Officer Carreras testified that he was eventually charged with murder. He made that statement anyway. He was charged with murder."
At that point, defense counsel objected. The trial judge admonished the jury to disregard the comments on the murder charge, and reserved defendant's right to make a motion for a mistrial at the conclusion of the argument. At that time the motion was made, and denied.
The denial of a mistrial upon the motion of a defendant, when the motion is based properly on one of the grounds listed in article 770, is "per se a substantial violation of a statutory right." State v. Green, 315 So.2d 763, 765 (La.1975). See also State v. Brown, 428 So.2d 438, 443 (La. 1983); State v. Perry, supra.
The objection was based on the statement of the prosecutor concerning the defendant's being charged with murder. The comment was within the hearing of the jury, during argument, and referred directly to another crime alleged to have been committed by the defendant. The comment concerning the murder charge comes within the scope of C.Cr.P. 770(2), and will constitute reversible error if the evidence of the murder charge was inadmissible.
The evidence of the beating and the shooting of the victim was admissible as part of the res gestae of the offense. As already stated, evidence of the death of the victim was determined to be relevant by the trial judge, and so the evidence of the death of the victim was admissible.
In cases where severe acts of violence have been perpetrated against the victim of an armed robbery, it is, as a practical matter, impossible for any court, prosecutor, defense counsel or witness to exclude entirely some references to occurrences which form an integral part of the history of the offense. Due to the tight intertwining of all of the facts, it is not impermissible to admit some references to *103 an allegation of another crime which arises out of the same factual transaction as the one for which a defendant is being tried. The references, however, must be relevant to some element of the case, and cannot unduly prejudice the defendant. When there has been but one factual basis upon which action by the police or the district attorney is supported, it will not be considered unduly prejudicial when comments are made referring to other charges arising from the same facts.
Whenever a confession is sought to be introduced, it is quite relevant to determine the state of mind of both the defendantand the police officersat the time of the giving of the statement. This goes to the heart of whether or not the defendant was, or believed himself to have been, coerced, threatened, or induced to make the statement.
In the present case the assistant district attorney referred to the testimony of one of the witnesses. He repeated before the jury, during closing argument, that defendant had been charged by the police for the murder of the armed robbery victim. While this is a reference to a different statutory crime, for which different evidence is required in order to sustain a conviction, it was part of the circumstances surrounding the armed robbery, the apprehension of the suspected perpetrator, and his confession to the crime. It might explain why the defendant made his statement: he thought that he might go to the electric chair, and believed that he was exculpating himself from the possible murder of the victim, by admitting to be an "accessory" to the armed robbery. This evidence could assist the jury to determine the subjective voluntariness of the defendant's statement, and weigh the confession accordingly.
Considering the connexity between the actions of the defendant and the murder charge, and the practical inability to completely segregate comments on one during the trial of the other, it was not impermissible to admit evidence of the defendant's arrest for murder.
Because the evidence was admissible, even though the evidence was not allowed into the record by the trial judge, the comments by the district attorney during closing argument do not come within the scope of the mandatory mistrial provisions of C.Cr.P. 770(2). Instead, they come within the scope of C.Cr.P. 771, and the trial judge was within his discretion in admonishing the jury to disregard the comments, and denying the motion for mistrial.
Assignments of Error Nos. 7, 8 and 9 are without merit.
Argument No. 5
Defendant contends that it was improper for the state to use his earlier guilty plea as a basis for the multiple offender bill. He argues that his earlier plea was made without having been "boykinized" properly, and that Boykin should require the trial judge to inform a defendant of the possible use of the guilty plea conviction in future multiple offender cases.
In 1977 defendant, after being charged with simple burglary, pleaded guilty to the lesser charge of accessory after the fact to simple burglary. R.S. 14:25, 14:62. At the time of the entry of his plea, the judge "boykinized" defendant.[5] The trial judge *104 was satisfied that the plea was knowingly and intelligently entered, and was free and voluntary. Later, after defendant was arrested for possession of marijuana (on the night of the armed robbery of Dennis Acosta), defendant moved to withdraw his earlier guilty plea. The motion came up for hearing after defendant's armed robbery trial had ended. At the conclusion of the hearing, the judge found that the earlier plea was accepted properly by the first trial judge. Defendant sought writs from this court, arguing that he was not "boykinized" properly, which application was denied. State v. Nuccio, 420 So.2d 163 (La. 1982). At the hearing in the present case, on defendant's motion to dismiss the multiple offender bill, the trial judge again found that the defendant's Boykin rights had been respected.
A guilty plea will not be considered valid unless the plea was a free and voluntary choice on the part of the defendant. Under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the decision to plead guilty will not be considered to be free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. There also must be an express and knowing waiver of those rights, State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), and the waiver must be on the record, which must unequivocally show that the waiver was free and voluntary. State v. Halsell, 403 So.2d 688, 690 (La.1981). While a colloquy between the judge and defendant is the preferred method of proof of a free and voluntary waiver, the colloquy is not indispensible when the record contains some other affirmative showing of proper waiver. Id.
Boykin, furthermore, only requires that a defendant be informed of the three rights enumerated above. Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions. Our jurisprudence has never required that a defendant be informed that his guilty pleahis convictionmay be used as a basis for the filing of a future multiple offender bill. For the most part, our application of Boykin has been with very few exceptions or expansions. Only in the extraordinary case where a plea bargain is entered, in which the prosecutor specifies a recommended sentence, will the state be barred from using the guilty plea as an enhancement predicate when the bargained *105 plea is the one which constitutes the second offense which the prosecutor seeks to enhance, and the defendant was not informed that the district attorney could or would multiple bill him. See State v. Hayes, 423 So.2d 1111, 1114 (La.1982).
At the time defendant Nuccio made his Boykin statement to the judge, he was represented by counsel, and, according to the record, apparently entered into some sort of plea bargain in which he was promised only that a presentence investigation would be conducted. Nonetheless, the trial judge informed defendant of his Boykin rights to "be tried by a jury, examined (sic) the people who said you did this, that you could testify if you wanted to or you could remain silent, and that you have the right to be tried by a jury and if found guilty, you could appeal the case." Nuccio acknowledged his understanding of those rights. Since all of the constitutional requirements have been met, it was proper for the trial judge to rule as he did and accept the earlier guilty plea as a predicate for a multiple offender bill.
Assignments of Error Nos. 13, 20 and 21 are without merit.
Argument No. 6
Defendant contends that the trial court erred in denying a special jury instruction. The requested instruction dealt with the disposition of the confession. Defendant requested that the jury be informed that the state had to prove to it, beyond a reasonable doubt, that the confession was obtained freely and voluntarily, and that the jury "accept it or reject it accordingly." The effect of the requested charge was to tell the jury it must decide the admissibility of the confession.
A trial judge must give a requested jury instruction when it "does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent." C.Cr.P. 807. If the requested charge does not conform to the statutory requirements, it need not be given by the judge.
The issue of admissibility of a confession is a question for the trial judge. The task of the jury is to determine the weight to be given to the confession after it has been admitted into evidence. State v. Ross, 343 So.2d 722 (La.1977). The requested charge in the present case would have required clarification or explanation, and was not wholly correct. The trial judge properly denied the requested charge.
Assignment of Error No. 16 is without merit.
Argument No. 7
Defendant contends that the trial judge erred in denying his request for a special jury instruction to the effect that a conviction for armed robbery carried a mandatory minimum sentence of five years at hard labor without benefit of probation, parole or suspension of sentence.
State v. Blackwell, 298 So.2d 798 (La.1974), decided the specific issue in this assignment, adversely to the defendant.
Assignment of Error No. 17 is without merit.
Supplemental Argument
Defendant contends that it was error for the trial judge to deny his request to call Officer Lauga for limited cross-examination. Officer Lauaga testified at the hearing on the motion to suppress the confession, and stated that he was the only officer who was with defendant from the time of his arrest until the time the three other officers began interrogating Nuccio for his statement. At the trial on the merits, the state decided not to call Officer Lauga, but, instead, to call other officers to lay the foundation for the confession. Defense counsel, not expecting any contradictory statements to be made by the other officers, also decided not to call Lauga. Lauga thus was excused from the witness sequestration order. As the trial progressed, and the other officers gave versions quite different than the one given by Lauga, defense counsel wanted to present the testimony of Lauga under limited cross-examination for impeachment purposes. The trial *106 court ruled, after a state objection, that the defendant could call Lauga, but that he would be called as a defense witness, subject to all of the limitations inherent in direct examination, including the inability to impeach him. Because of this restriction, Lauga was not called.
The trial judge was within his broad discretion in requiring defendant to call Lauga under direct examination. There is no provision allowing the defendant to call witnesses under cross-examination. Defendant made no effort to show that Lauga was hostile. See R.S. 15:277, 487.
Assignment of Error No. 6 is without merit.
Since none of defendant's briefed and argued assigned errors have merit, the conviction and sentence of the defendant are affirmed.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The critical issue at the trial on the merits in this case was the weight to be given by the jury to defendant's statement, which defendant contends was beaten out of him by the police.
At the motion to suppress, Officer Lauga testified he was the only officer who was in the room for the entire interrogation. The trial judge expressly relied on Lauga's testimony as the basis for denying the motion.
At trial, Officer Ferrand testified that he was in the room "the whole time" and that Lauga was not there "while I was in there". Officer Hernandez testified that Lauga "might have come in at one time during the proceedings". The prosecutor did not call Lauga to testify at trial.
The trial testimony of Officers Ferrand and Hernandez was thus inconsistent with the testimony given by Officer Lauga at the motion to suppress. When defense counsel called Officer Lauga (who had not been called by the prosecutor) at trial for the purpose of challenging the important testimony of the other two officers, the trial judge erred in requiring counsel to vouch for Lauga's credibility and to ask only non-leading questions. The court's requirement that defendant vouch for Lauga's credibility effectively prevented him from presenting evidence which contradicted the trial testimony of the other policemen and deprived defendant of his constitutional right to present a fair defense.
NOTES
[1] Paul Krolowitz was convicted of the armed robbery of Dennis Acosta, and was sentenced to fifty years at hard labor, without benefit of probation, parole or suspension of sentence. That conviction and sentence have been affirmed by this court. State v. Krolowitz, 407 So.2d 1175 (La.1982).
[2] Both witnesses, Kristoff and Stohlman, gave their same stories in the Krolowitz case.
[3] Defendant Nuccio originally was arrested for both armed robbery and murder. He was indicted for both crimes also, but was tried only for the armed robbery indictment.
[4] "BY MR. KATZ [the prosecutor]:

Q Officer, did anything happen prior to the statement given by Mr. Nuccio?
A Prior to the statement given by Mr. Nuccio, yes, sir. He was arrested from his residence.
Q And did anything else happen just prior to the statement that he gave?
A Prior to the statement?
Q Yes.
A Yes, sir. I had arrested another subject involved in the armed robbery and murder.
Q I direct your attention to anything that happened concerning the defendant, Gerald Nuccio just prior to he giving you a statement?
A I didn't hear you, sir.
Q I'm referring to the defendant, Gerald Nuccio. I want to know if anything happened that you are aware of prior to him giving you a statement that had to do with him, Gerald Nuccio.
A We had arrested him from his house. Yes, sir. We advised him of his rights before we took the statement from him, sir.
Q And what rights did you advise him of?
A We advised him on the regular form that you have. The right to remain silent. The right to an attorney. We could stop questioning him anytime he wanted. We'd stop questioning him and the charges that he was charged with, armed robbery and murder.
Q I'm sorry, officer. I was thinking about something else. What rights did you advise him of now?
A Armed robbery and murder.
Q You told him that he was
A I didn't advise him. I was a witness toMr. Gerald Nuccio was advised from a form. I did tell him after he was read his rights, I advised him again and in the statement he received where I advised him several times of his rights.
Q Do you remember what rights he was advised of?
A Yes, sir.
Q What rights was he advised of?
STATEMENT BY MS. BAYER [defense counsel]: May we approach the bench?"
(At this point, defense counsel objected, and, in chambers, moved for a mistrial, which was denied).
. . . . .
"STATEMENT BY THE COURT:
The jury will disregard the remarks of the witness. The statement that (sic) the witness when he stated that the defendant was arrested for armed robbery and murder. This is an armed robbery trial. The defendant is not on trial for murder. The witness will refrain from making any reference to any such thing as murder.
STATEMENT BY THE WITNESS:
I did not say he was arrested for murder, your Honor.
STATEMENT BY THE COURT:
Lets not compound it. The jury is requested and instructed to disregard the testimony of the witness insofar as any other crime other than the crime of armed robbery is concerned.
BY MR. KATZ:
Q Officer, to try to get back into the continuity, Officer, what rights did you hear Officer Ferrand give the defendant?
A Well, he read him the rights of what he was being charged on, armed robbery and what I am not supposed to say.
STATEMENT BY MS. BAYER:
Objection, your Honor.
STATEMENT BY THE COURT:
Objection is sustained.
STATEMENT BY MS. HOWELL:
Your Honor, we would also renew our motion.
STATEMENT BY THE COURT:
The motion is denied. The jury will disregard the remark of the witness on what I am not supposed to say. The witness cannot say indirectly what he cannot say directly."
[5] "BY THE COURT:

Q. Mr. Nuccio how old are you, son?
A. 19.
Q. Had Mr. Drake gone over everything with you, son?
A. Yes, sir.
Q. Do you understand what is happening here in Court today?
A. Yes, sir.
Q. You were charged with Simple Burglary with Brechtell and Warner. The State, after having your lawyer explain to him what you what you said you did, has charged you with accessory after the fact, that is getting some of the money from it; do you understand that?
A. Yes, sir.
Q. Are you guilty of that?
A. Yes, sir.
Q. Now, you understand that you have the right if you wanted to plead not guilty, be tried by a jury, examined (sic) the people who said you did this, that you could testify if you wanted to or you could remain silent, that you would have the right to be tried by a jury and if found guilty, you could appeal the case; do you understand that?
A. Yes.
Q. Do you understand when you plead guilty, right now you have given up all of that?
A. Right.
Q. Do you also understand, by pleading guilty, give up what we call your constitutional rights such as illegal arrest, illegal search and seizure, illegal confession and illegal lineup?
A. Yes, sir.
Q. Now, son, you got some of the money, is that correct from this robbery.
A. Well, I was with them, but they had the money.
Q. Who had the money?
A. Bernard Warner.
Q. You received what out of the money?
A. Some of the drinks. They gave me a couple of dollars because I was driving them around.
Q. Has anybody told you, you have to plead guilty to this?
A. No, sir.
Q. Is this your own decision?
A. Yes, sir.
Q. Has anybody promised you anything other than what Mr. Drake told you that this will be sent for what we call a presentence investigation?
A. No.
Q. He tells me you have been in trouble once before, is that correct?
A. Yes, sir.
Q. How long ago was that?
A. About 17 years old, right before I got married.
Q. How old are you now?
A. 19.
Q. Son that's two (2) years ago?
A. Yes, sir.
Q. Were you placed on probation for that?
A. Yes, six (6) months unsupervised.
The Court:
The Court is going to refer this matter to the Department of Correction for a presentence investigation, after which time the Court will notify you of the date of the sentencing. The Court finds the plea of guilty is voluntary, free from persuasion and compulsion."