GAUDIN, Judge.
Appellant Steven Stovall and two other men were indicted for the first degree murder of Pamela D. Anderson on December 7, 1990. After Stovall’s motion to suppress his confession was denied, he pled guilty to a reduced charge of second degree murder while reserving the right to appeal the denial of the motion to suppress. He is before this Court in accord with State v. Crosby, 338 So.2d 584 (La.1976).
Stovall argues that the state failed to carry its burden of proving that his taped confession and his waiver of Miranda[1] rights were freely and voluntarily given.
We affirm the denial of Stovall’s motion to suppress, finding the record fully supportive of the trial judge’s ruling.
Stovall gave two taped statements. The first statement was completely exculpatory. During the second statement, however, Sto-vall admitted shooting and killing Anderson. He said that he and another man, identified as Chuckie, forced their way into the victim’s apartment after they knocked on the door and the victim slightly opened the door. Sto-vall said:
“I pushed Chuckie in. As I pushed him in, him and that little broad was struggling. I went to break it up and the gun went off.”
Prior to what he called “a caper,” Stovall was given a .38 caliber pistol. He and Chuckie were part of a plan to rob the victim’s apartment. Stovall stated that he was promised “big money” for assisting in the robbery.
Also in the apartment with the victim when Stovall and Chuckie entered was her small child. After Anderson was shot, Stovall said, the baby “... just was hollering, just crying.”
The first taped statement was given by Stovall at the police station, ending at 12:42 a.m. on December 9, 1990. Detective Reed Rushing testified that Stovall was told that the police were investigating Anderson’s shooting and that others had “made statements against him.” Rushing said that before the first statement was given, Stovall’s Miranda rights were explained and that he (Stovall) signed a waiver form. Rushing said: “He stated that he understood those rights.”
*1230 In the first statement, Stovall proclaimed his innocence and accounted for his whereabouts at the time of the Anderson murder.
After completion of the first statement, Detective Steve Buras told Stovall' that the police had information indicating that what Stovall had said was not accurate. The information included several other statements, including one by Chuckie; however, these statements were neither read to nor played for Stovall, Buras said. Eventually, Buras said, Stovall admitted that he had not been truthful and that he was willing to give another statement. Buras said that Stovall was not threatened by him or anyone else and that Stovall was not physically handled.
Stovall testified that almost immediately after giving the exculpatory statement, he was handled, pushed around and threatened by police officers and that a pistol was waived in his face. Stovall said that he was handcuffed during the entire time he was at the station and that during the second taping, he was forced “... to say stuff I ain’t want to say.” The second statement was taped by Buras between *1:14 a.m. and 1:27 a.m.
Two policemen were present during the first statement and three during the second statement, Stovall said. The added policeman had a mustache, and it was this officer who allegedly waived the pistol in his (Sto-vall’s) face. Stovall stated that several recorded taped statements of other suspects were played for his benefit. Stovall also said that he was advised by the officers that if he cooperated “... they’d tell it to the judge and the D.A to go, you know, light on me, like, you know, I wouldn’t have to take the rap and stuff like that.”
Rushing and Buras denied that any undue pressure was applied and they denied that a third officer threatened Stovall with a pistol.
At the start of the second statement, Bu-ras explained Miranda rights to Stovall. Stovall said that he wanted these rights read to him and they were. Stovall then acknowledged that he understood these rights.
At one point during the second statement, Stovall said “Stop.” The tape recorder was turned off. Buras said that he couldn’t recall why Stovall wanted the recording stopped but that the reason was “not significant.” Buras said that he asked Stovall if he wanted to continue and he (Stovall) said yes.
The trial judge listened to Stovall’s two recordings and found nothing irregular or illegal. We also listened to the tapes. Although there is some evidence in the record that Stovall is mildly retarded with an I.Q. of 65, he nonetheless appeared to have average intelligence. He calmly, straightforwardly and without much hesitation directly responded to questions about the “caper” and his. role in the robbery scheme. If there was any police coercion, such was not apparent or even suggested by the recordings.
During the tapings, Stovall was able to easily remove his wallet from his pants, indicating that he was not handcuffed as he claimed.
In State v. Brown, 414 So.2d 689 (La.1982), the Supreme Court of Louisiana held that a trial judge did not abuse his discretion in finding that the defendant’s statement was knowingly and voluntarily made notwithstanding an I.Q. of 65 to 75. The Court stated, quoting from prior opinions, that mere weakness of mentality or subnormal intelligence does not of itself vitiate the ability to intelligently waive constitutional rights and make a free and voluntary confession. The critical factor, the Court said, was whether or not the defendant was able to understand the rights being explained.
Here, the trial judge found that Stovall understood his Miranda rights and that he freely chose to waive these rights. The record, particularly the tapes themselves, support these conclusions.
In contending that the prosecution failed to rebut allegations of police threats and abuse beyond a reasonable doubt, Stovall cites State v. Nuccio, 454 So.2d 93 (La.1984). Such reliance, however, is misplaced. The Nuccio facts differ from the facts of Stovall's confession, particularly if the trial judge, after listening to the tapes and considering all other evidence, chose to believe the police officers and not Stovall. See State v. Messiah, 538 So.2d 175 (La.1988), wherein the Supreme Court stated, as it had many times *1231 previously and since, that a trial judge’s ruling on admissibility and his conclusions as to credibility of witnesses are accorded great weight.
Finally, we note that prior to accepting Stovall’s guilty plea, the trial judge conducted a colloquy with the defendant to ascertain if he knew and understood that he was waiving his right to a jury trial, his right to confront his accusers, etc. The trial judge determined that Stovall was fully informed of rights and that he was entering the guilty plea to a reduced charge of his own volition. The trial judge in addition advised Stovall of the sentence to be imposed once the guilty plea was accepted by the court. We see no reversible error throughout this record.
AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).