FREDERICKA HOMBERG WICKER, Judge.
 

 |Jn this criminal proceeding the defendant/appellant Paul Farinas appeals his manslaughter guilty plea conviction and his 30-year sentence. He asserts that his guilty plea is constitutionally and statutorily infirm. The state moved to dismiss the appeal as untimely. For the reasons that follow, we deny the motion; affirm the conviction; and, affirm the sentence. Furthermore, we have reviewed the record for errors patent and find none.
 
 [1]
 
 Motion to Dismiss Appeal
 

 The defendant was charged by indictment with second degree murder, in violation of La. R.S. 14:30.1, allegedly occurring on September 3, 2004. On June 19, 2006, the defendant, who was represented by counsel, pleaded guilty to the | .-¡amended and reduced charge of manslaughter, in violation of La. R.S. 14:31. The defendant’s counsel did not seek an appeal either orally or through written notice. The trial judge granted the
 
 pro se
 
 defendant an out-of-time appeal on January 14, 2009.
 

 Since the defendant did not file a motion to reconsider his sentence, the delay for taking an appeal elapsed 30 days after the rendition of the judgment. La. C. Cr. P. art. 914(A)(1). Following the 30-day delay, the defendant’s conviction and sentence became final.
 
 State v. Counterman,
 
 475 So.2d 336, 338 (La.1985). After the time for appealing has elapsed, the conviction and sentence are no longer subject to review under the ordinary appellate process, unless the defendant obtains the reinstatement of his right to appeal.
 
 Id.
 
 The appropriate procedural vehicle for a defendant to exercise his right to appeal, after the delay provided by Article 914 has expired, is an application for post-conviction relief.
 
 Id.,
 
 475 So.2d at 339.
 

 La. C. Cr. P. art. 930.8 provides time limitations for filing an application for post-conviction relief, including applications which seek an out-of-time appeal. Such applications shall not be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 (finality of judgment on appeal), unless certain exceptions apply. La. C. Cr. P. art. 930.8(A). In this case, the defendant had turn years or until July 19, 2008 to file an application for post-conviction relief requesting an out-of-time appeal. The state argues that the defendant did not request an out-of-time appeal until August 7, 2008, which was 19 days past the two-year deadline for seeking reinstatement of his appellate rights through an application for post-conviction relief.
 

 
 *1135
 
 The defendant, proceeding
 
 pro se,
 
 filed a timely post-conviction application on June 23, 2008. He attached a letter to the Clerk of Court in which he stated that |4the correctional facility had to close the law library and he was unable to present all of the information that must accompany his application. He asked the Clerk of Court to file his June 28, 2008 application. He also stated that he would provide additional information at a later date once the law library became available. Thus, he contemplated filing supplementation to his timely-filed application. Seven days later on June 30, 2008,
 
 [2]
 
 before the defendant filed a supplementation, the trial court ruled on the incomplete post-conviction application by denying it. Among other things, the court ruled that the post-conviction application was improper because the defendant had not exhausted his appellate rights. The defendant sought a timely writ application to this court from that ruling.
 
 State ex. rel. Paul Farinas v. State,
 
 08-KH-822 (La.App. 5 Cir. 12/23/08) (unpublished writ disposition). Meanwhile, the defendant filed an application for an out-of-time appeal on August 7, 2008, which the trial judge denied on August 19, 2008 as untimely and improperly filed as a motion. This court granted the writ and concluded that the defendant should have been given an opportunity to amend his later motion or his application for post-conviction relief and to set forth support for his application’s timeliness. The state argues that the defendant’s notice of intent to seek writs was notice only of the June 30, 2008 denial of his application for post-conviction relief and that the notice made no reference to the denial of the out-of-time appeal.
 

 We need not address whether the August denial of the defendant’s motion to seek an out-of-time appeal was properly before this court in the writ application. The August ruling is of no moment because the timeliness of this appeal turns on the effect of the June 30, 2008 ruling regarding the timely-filed application for post-conviction relief. At the time that the trial judge ruled, the defendant had noted, albeit by letter to the Clerk of Court, that he desired to supplement his ^application because he did not have access to a law library at the time. Following the writ disposition, on remand, the trial judge granted an out-of-time appeal.
 

 The trial judge has discretion to allow the defendant to amend and supplement a timely-filed application for post-conviction relief.
 
 State ex. rel. Duhon v. Whitley,
 
 92-1740 (La.9/2/94), 642 So.2d 1273. This is so even if the supplementation arises after the expiration of Article 930.8’s time bar.
 
 State v. Sampson,
 
 02-909 (La.2/14/03), 841 So.2d 747 (per curiam). Implicit in this court’s ruling on the writ application is the recognition that the trial court has discretion to allow supplementation. In granting the out-of-time appeal, the trial judge concluded that the uniform application for post-conviction relief should be used in obtaining such an appeal. However, in the interest of judicial economy, the trial judge granted the out-of-time appeal. We construe the defendant’s letter as a motion to supplement his post-conviction relief application.
 
 Pro se
 
 filings are subject to less stringent standards than formal pleadings filed by lawyers.
 
 State ex. rel. Egana v. State,
 
 00-2351 (La.9/22/00), 771 So.2d 638 (per curiam) (Citations omitted). A
 
 pro se
 
 petitioner is not to be denied access to the
 
 *1136
 
 courts for review of his case on the merits by the overzealous application of form in pleading requirements or hypertechnical interpretations of court rules.
 
 Id.
 

 We hold that under these circumstances when the trial court rejects the defendant’s timely-fíled application for post-conviction relief as improper because the defendant has not yet exhausted his appellate rights and does not rule on an outstanding motion to supplement the application based on lack of access to a law library, due process requires that the relator be given his right to amend to seek an out-of-time appeal.
 
 See: State v. Williams,
 
 000-1725, p. 8 (La.11/28/01), 800 So.2d 790, 796
 
 (discussing due process right to appeal.).
 
 In the writ disposition, this court afforded the defendant that right. Thereafter, the trial court in the | (¡interest of judicial economy properly treated the subsequent August 7, 2008 motion for out-of-time appeal as a timely amendment or supplement to the original timely-fíled application.
 

 Accordingly, we deny the motion to dismiss the appeal.
 

 Facts
 

 The defendant’s conviction was the result of a guilty plea. A factual basis was provided by the state at the time of the plea. The state informed the court that at trial on the merits, it would have shown that on September 3, 2004, the defendant killed his wife, Delinda Farinas, with the specific intent to kill or cause great bodily harm to her, and “pursuant to this plea agreement,” at the time he committed the offense that he was acting in heat of blood and sudden passion. In addition, the following facts were taken from the hearing on the defendant’s motion for a preliminary examination that was completed a few days before his guilty plea.
 

 The preliminary examination was held on three days. At the first setting, the grand jury had not yet returned an indictment. After the grand jury returned an indictment, the matter was allotted to another trial judge who heard the matter anew. The defendant and his defense counsel were present in court for all hearing dates.
 

 The state presented the testimony of Jefferson Parish Sheriff Officer Sergeant Donald Meunier, the lead homicide investigator, and Dr. Karen Ross, the Jefferson Parish Coroner’s office forensic pathologist and assistant coroner who performed the autopsy.
 

 Sergeant Meunier testified that officers had received a 911 call from 434 Bruce Avenue in Terrytown at approximately 6:46 AM that morning. Sergeant Meunier arrived at the scene around 8:30 AM or 8:40 AM. He saw no signs of 17forced entry. The nude victim was lying in a bathtub filled with water with her face, including her mouth and nose, above the water and her head resting on the back of the bathtub. Sergeant Meunier saw a pinkish froth discharge from the victim’s mouth and nose. A curling iron rested on the victim’s pelvic bone. The curling iron and its cord were partially submerged in the water. The cord was attached to an extension cord. By the time Sergeant Meunier arrived, other police officers had unplugged the cord. The victim’s hand was cupped over the curling iron. A cloth curler used to roll hair was clipped to the back of her head. Other curlers were nearby. A mirror was propped against the toilet and angled toward the bathtub.
 

 At the time the incident was reported, there were five children in the home. Sergeant Meunier learned that prior to his arrival, the defendant was there briefly. Later, Sergeant Meunier took video statements from the victim’s eleven-year-old son and eight-year-old daughter — the de
 
 *1137
 
 fendant’s stepchildren. The son stated that the defendant was aware that the son’s mother intended to leave the defendant. The daughter said that she awakened during the night preceding the death when she heard yelling and the victim and the defendant arguing. She also heard her mother pleading with the defendant to put down the gun. She stated she observed both of them in the hallway and at that time the defendant had a handgun.
 

 Sergeant Meunier said that while he was at the scene, Robert Johnson informed the police that he was the victim’s boyfriend. Mr. Johnson suspected the defendant of killing the victim. He told the officers that the victim intended to separate and ultimately divorce the defendant. He stated that the victim had either secured or was in the process of securing an apartment on the Westbank. The officers went to that apartment complex and confirmed that the victim had filled |sout an application two days before her death, requesting occupancy as soon as possible.
 

 Sergeant Meunier said that six weeks after the death, the defendant gave a statement after being advised of his
 
 Miranda
 
 rights and waiving them. The defendant said that he left the residence at 1:30 AM on that date to go to work. He stated that his wife was pouring a second bath when he left.
 

 Sergeant Meunier stated that he obtained a statement from a neighbor who saw the defendant later that morning. The neighbor’s bedroom is located at the front of her residence and her window looks out onto the street. She told the officers that on the morning of the death at approximately 5:30 AM she was alerted to the revving of an engine on a large truck. She saw the defendant seated in the truck for a matter of minutes. The windows in her room rattled and she considered going outside and approaching the defendant but he pulled off before she could do so.
 

 Dr. Karen Ross testified that the victim died as a result of a homicide. She attributed the cause of death to components of drowning and strangulation but she could not rule out electrocution. She stated she definitely had evidence for drowning and strangulation. In her opinion, the victim died as a result of homicidal violence.
 

 The Guilty Plea
 

 On June 19, 2006, the trial judge entered into a guilty plea colloquy with the defendant. Also, the defendant, his counsel, and the trial judge executed a contemporaneous written acknowledgment and waiver of the defendant’s constitutional rights.
 

 At the outset, defense counsel informed the court that the defendant would withdraw his former plea of not guilty to the charge of second degree murder and 19enter a plea of guilty to the charge of manslaughter. The trial judge then questioned the defendant under oath.
 

 The defendant stated that he was 35 years of age at the time of the hearing. He could read and write the English language and had attended school until the 11th grade. He was not under the influence of drugs or alcohol. The defendant testified that he had read the written acknowledgment and waiver form and it had been explained to him by his attorney. The defendant said that he understood that he was withdrawing his former plea of not guilty to second degree murder and entering a plea of guilty to manslaughter. He understood that the maximum sentence he could receive was 40 years at hard labor.
 

 The trial judge asked the defendant if he understood that he had the right to a trial by jury, the right to cross-examine the witnesses against him, the right to call witnesses on his behalf, the privilege
 
 *1138
 
 against self-incrimination, the right to testify if he so chose, and, the right to maintain a plea of not guilty.
 

 The defendant stated: “Yes, sir.” He also stated that he understood that if he pleaded guilty he was waiving or giving up those rights.
 

 The defendant also acknowledged that he understood that if he were convicted of a subsequent offense, the state may seek an enhanced penalty pursuant to the habitual offender law.
 

 Next, the prosecutor presented a brief recitation of the facts of its case against the defendant. The prosecutor, as noted above, stated that if the case went to trial, the state would show that the defendant had specific intent to kill or cause great bodily harm to his wife, the victim, and that pursuant to the plea agreement the defendant was acting out of heat of passion or blood. The defendant acknowledged that he understood the nature of the charge to which he was 11(lpleading guilty. He acknowledged that he was pleading guilty because he was guilty.
 

 The defendant agreed that he had been advised by his attorney of the delays for seeking post-conviction relief, and that in the event the court accepted his plea, he would be sentenced to 30 years at hard labor. The defendant stated that he wished to plead guilty in light of the court’s explanation.
 

 The trial judge accepted the defendant’s plea as having been knowingly, intelligently, freely, and voluntarily made. He sentenced the defendant to a negotiated 30-year sentence.
 

 The contemporaneous acknowledgment and waiver form provided the following:
 

 Among other things, the form contained a series of questions and lines that provided for “yes” or “no” answers. Instead of responding appropriately with such answers, the defendant initialed the designated lines, therefore indicating that he had read those provisions. The pertinent provisions that were initialed by the defendant stated:
 

 You have a right to a trial by jury, which jury may either find you guilty as charged, guilty of a lesser crime, or not guilty. You have the right to retain an attorney of your choice to defend you at every stage of the proceeding. If you cannot afford an attorney, one will be appointed for you, which will cost nothing. By entering a plea of guilty, you are waiving or giving up these rights. Do you understand that?
 

 At any trial, you have the right to confront your accusers and to compel testimony on your behalf from your witnesses. By entering this plea of guilty, you are waiving or giving up these rights. Do you understand that?
 

 At any trial, you have a privilege against self-incrimination, in other words the right to remain silent and that silence cannot be held against you? Do you understand that?
 

 If you were to go on trial, and in the event of a conviction, that is, if the jury finds you guilty, you would have the right to appeal. Again, |nin the event of an appeal, if you could not afford an attorney, one would be appointed for you, which would not cost you anything. By entering a plea of guilty, you are waiving or giving up these rights. Do you understand that?
 

 [[Image here]]
 

 If you plead guilty, and this court accepts your plea, you do not have the right to assert any allegation of defects, such as
 

 (a) an illegal arrest;
 

 (b) an illegal search and seizure;
 

 (c) an illegal confession;
 

 
 *1139
 
 (d) an illegal line-up; and
 

 (e) lack of sufficient evidence to convict you.
 

 The last page of the form provided signature lines for the defendant, defense counsel and the trial judge. Defense counsel signed the following statement that the defendant initialed:
 

 I, as attorney for the defendant, was present during the recitation of the foregoing colloquy between the defendant and the trial judge at the time of defendant’s plea of guilty.
 

 I also, have informed the defendant of his or her rights, particularly the nature of the crime to which he or she is pleading guilty, the maximum sentence the court could impose under the law, and the fact that the defendant, by entering this plea of guilty is waiving his or her right to a trial by jury or by court alone, his or her right to confront his or her accusers, his or her right against self-incrimination, and lastly that his or her only appeal is for review of jurisdictional defects; and I am entirely satisfied that the defendant knowingly, willingly, intelligently and voluntarily has entered this plea of guilty knowing the consequences.
 

 The defendant signed the portion of the form that followed. That portion stated (emphasis in original):
 

 I, as the defendant in this case, acknowledge:(l) that the foregoing has been read to me; (2) that my attorney and the trial judge have explained the nature of the crime to which I am pleading guilty; (3) that the trial judge has explained to me all of my rights to me and what rights I am waiving or giving up, as listed above, and that I have been given every opportunity by the trial judge to ask questions in open court about anything I do not understand and about all of the consequences regarding my plea of guilty. I am completely satisfied with the explanation of my attorney and the trial judge.
 

 I FURTHER ACKNOWLEDGE THAT MY ACT OF PLEADING GUILTY IS A KNOWING, INTELLIGENT, FREE AND VOLUNTARY ACT ON MY PART.
 
 I know that no one can force 112me to plead guilty. I know that by pleading guilty I admit I committed the said crime. I know this plea of guilty is more than a confession. It is also a conviction. Nothing further remains except for the trial judge to give judgment and give me my punishment. I waive all delays for sentencing and acknowledge I am ready for sentencing.
 

 The trial judge signed the statement that followed:
 

 Having entered into the foregoing colloquy with the defendant, I am satisfied that the defendant is aware of the nature of the crimes to which he or she is pleading guilty, that the defendant did in fact commit the crime. I further find that he or she has made a knowing, intelligent, free and voluntary act of pleading guilty to the above mentioned crime. I have found that a factual basis exists for the defendant to plead guilty to the above mentioned crime. I, therefore, accept the defendant’s plea of guilty.
 

 Assigned Error: Statutory and Constitutional Infirmities
 

 As a general proposition, the validity of a guilty plea turns on whether the defendant was informed of three fundamental constitutional rights-his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers-and whether, having been informed of those rights, the defendant knowingly and voluntarily waived them.
 
 State v. Juniors,
 
 03-2425 (La.6/29/05), 915 So.2d 291,
 
 cert. denied,
 
 
 *1140
 

 Juniors v. Louisiana,
 
 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006)
 
 citing Boykin v. Alabama,
 
 395
 
 U.S. 238, 89 S.Ct.
 
 1709, 23 L.Ed.2d 274 (1969),
 
 State v. Jones,
 
 404 So.2d 1192, 1196 (La.1981), and
 
 State ex rel. Jackson v. Henderson,
 
 260 La. 90, 103, 255 So.2d 85, 90 (1971). A plea cannot be considered voluntary without notice of the essential nature of the charge or charges.
 
 See: State ex rel Halvorsen v. Blackburn,
 
 388 So.2d 806, 807 (La.1980)
 
 quoting Henderson v. Morgan,
 
 426 U.S. 637, 645, 96 S.Ct. 2253, 2257-2258, 49 L.Ed.2d 108 (1976). This constitutional requirement is codified in La. C. Cr. P. art. 556.1(A)(1), which provides that the court shall not accept a guilty plea without first informing the defendant and determining that he understand the nature of the charge.
 

 | isThe defendant argues that his plea is not knowing and voluntary because the trial judge did not explain the
 
 Boykin
 
 triad of rights to him during the plea colloquy. He also asserts that the trial judge failed to explain that he could ask for a judge trial. Furthermore, the defendant argues that his plea is constitutionally infirm because the trial court did not explain the nature of the charge as required by Article 556.1.
 
 [3]
 
 The state disagrees.
 

 Louisiana courts have expressly refused to expand the
 
 Boykin
 
 advisement to encompass all rights the defendant may be waiving or to include all possible consequences of a guilty plea.
 
 Id., quoting State v. Nuccio,
 
 454 So.2d 93, 104 (La. 1984)
 
 (Boykin
 
 does not require “advising the defendant of any other rights [besides the fundamental triad] which he may have, nor of the possible consequences of his actions.”).
 

 When a defendant is represented by counsel, the trial court accepting his
 
 *1141
 
 guilty plea may presume that counsel has explained the nature of the charge in sufficient detail that the defendant has notice of what his plea asks him to admit.
 
 Id., citing Henderson v. Morgan,
 
 426 U.S. 637, 644-47, 96 S.Ct. 2258, 2257-59, 49 L.Ed.2d 108 (1976). In
 
 Henderson,
 
 the high court stated: “Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused.” 426 U.S. at 647, 96 S.Ct. at 2258. The Court also stated that “even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.”
 
 Id.
 

 In
 
 Juniors, supra,
 
 the defendant asserted that his guilty plea to the charge of armed robbery could not have been intelligent and voluntary, as required by
 
 Boykin,
 
 because the trial court gave an incorrect definition of armed robbery when informing the defendant of the offense to which he was pleading guilty. The Supreme Court found that the guilty plea colloquy clearly reflected that all constitutional requirements for accepting defendant’s guilty plea were satisfied. Furthermore, the defendant was represented by counsel, who presumably explained the nature of the charge against him in sufficient detail to provide him notice of what he was being asked to admit. 03-2425 at 61, 915 So.2d at 335.
 

 In the present case, a contemporaneous waiver and acknowledgment of waiver form was executed. The defense counsel signed the contemporaneous statement that he had informed the defendant of the nature of the crime to which he was pleading guilty. In addition, the defendant signed the portion of the form that stated his attorney had explained the nature of the crime to which he was pleading guilty. The defendant also acknowledged during the plea colloquy with the trial judge that he understood the nature of the charge to which he was pleading guilty. Furthermore, the defendant was present at the preliminary examination where evidence of the offense was presented. In
 
 State v. Bowick,
 
 403 So.2d 673, 675-76 (La.1981), the Louisiana Supreme Court held that the trial court did not err in | ^accepting the guilty plea under similar circumstances. In
 
 Bowick,
 
 the trial court did not enumerate the required elements of the offense but the defendant had previously been arraigned on the bill of information and a preliminary examination had been held at which evidence had been presented. Then at the plea, the defendant and his attorney both represented to the trial court that defense counsel had explained and that the defendant understood the nature of the crime to which he was pleading.
 

 Thus, we find that the defendant was fully advised of the nature of the charge and therefore the trial judge did not err in accepting the guilty plea as voluntarily and knowingly entered.
 

 The defendant also argues that the trial judge did not explain the
 
 Boykin
 
 triad of constitutional rights. The defendant evidently is relying on the plea colloquy during which the trial judge did not engage in a full explanation of the
 
 Boykin
 
 triad. In
 
 State v. Nuccio,
 
 454 So.2d 93, 104 (La. 1984),
 
 called into doubt on other grounds by State v. Johnson,
 
 94, p. 15 (La.11/27/95), 664 So.2d 94, 101, the Louisiana Supreme Court held that while a colloquy between the judge and defendant is the preferred method of proving a free and voluntary waiver of constitutional rights, the colloquy is not indispensable when the record contains some other affirmative showing of the waiver.
 

 
 *1142
 
 Moreover, contrary to the defendant’s assertion that the plea was invalid because the trial judge failed to explain he could ask for a judge trial, the Louisiana Supreme Court has held that advice as to the right to choose between a trial by judge or trial by jury is not a constitutional requirement for a valid plea of guilty.
 
 State v. Banks,
 
 412 So.2d 1025, 1027 (La.1982).
 
 Accord, State v. Edwards,
 
 384 So.2d 789, 790 (La.1980) (The trial judge is not required to inform defendant that he is waiving a trial by judge alone when he pleads guilty).
 

 _[xgThe defendant relies on a case that predated
 
 Nuccio
 
 and is distinguishable—
 
 State v. Martin,
 
 382 So.2d 933, 936 (La. 1980),
 
 overruled on other grounds by State v. Williams,
 
 392 So.2d 448 (La.1980). In
 
 Martin,
 
 the Louisiana Supreme Court held that the record of the guilty plea proceeding showed that the defendant waived his right to remain silent at that proceeding, but it did not show his intention to waive his right not to testify against himself at a trial. For that reason, the defendant’s guilty plea could not be used as a predicate offense.
 

 In the present case, unlike
 
 Martin,
 
 the record contains another affirmative showing of the waiver of the
 
 Boykin
 
 triad. Defense counsel signed a contemporaneous statement that he informed the defendant of his rights and the fact the defendant, by entering the guilty plea was waiving his right to trial by jury or by court alone, his right to confront his accusers, his right against self-incrimination, and that defense counsel was entirely satisfied that the defendant knowingly, willingly, intelligently, and voluntarily entered the guilty plea knowing the consequences. The defendant signed the form stating that he was completely satisfied with the explanation given by his attorney and the trial judge. He also initialed statements that gave a full explanation of the
 
 Boykin
 
 triad. That explanation included his privilege against self-incrimination “at any trial;” his right to confront his accusers; and, his right to compel testimony.
 

 During the colloquy, the defendant agreed that he understood the
 
 Boykin
 
 rights and that by pleading guilty he was waiving them. The defendant stated that he could read and write the English language. He also stated that he attended school until the 11th grade. He said that he had read a written acknowledgment of waiver form in that it had been explained to him by his attorney. On the waiver form, he signed a statement that he was completely satisfied with the explanation given to him by his attorney and the trial judge. Thus, we need not consider the [ 17trial court’s failure to explain fully to the defendant his
 
 Boykin
 
 triad of rights during the plea colloquy because the record otherwise contains adequate evidence of an affirmative showing of the defendant’s knowing and intelligent waiver of his
 
 Boykin
 
 constitutional rights. Therefore, we find no merit in this assignment of error.
 
 Accord, State v. Dunn,
 
 390 So.2d 525, 527 (La.1980) (The record showed a sufficient affirmative showing of the
 
 Boykin
 
 requirements.).
 

 Conclusion
 

 Accordingly, for the reasons stated, the motion to dismiss is denied; and, the defendant’s conviction and sentence are affirmed.
 

 MOTION TO DISMISS APPEAL DENIED; CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . The record was reviewed for errors patent, according to La. C. Cr. P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La. 1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We note that the defendant suggests that the trial judge erred in imposing sentence immediately rather than allowing the three-day delay between conviction and sentence provided by La. C. Cr. P. art. 873. The defendant also suggests that such error is harmless because he is not challenging the sentence. Article 873, however, pertinently states; "If the defendant expressly waives the delay provided for in this article or pleads guilty, sentence may be imposed immediately.” In this case, the defendant pleaded guilty. Therefore, sentence could be imposed immediately.
 

 [2]
 

 . On July 10, 2008, the trial judge denied the defendant’s June 30, 2008 filing claiming ineffectiveness of counsel.
 

 [3]
 

 . La. C. Cr. P. art. 556.1 provides:
 

 A.In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
 

 (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
 

 (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
 

 (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
 

 (4) That if he pleads guilty or nolo conten-dere there will not be a further trial of any kind, so that by pleading guilty or nolo con-tendere he waives the right to a trial.
 

 B. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.
 

 C. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.
 

 D. In a felony case a verbatim record shall be made of the proceedings at which the defendant enters a plea of guilty or nolo con-tendere.
 

 E. Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.
 

 The 2001 comments to Article 556.1 state that Section E is a "Harmless error” provision.