EDWIN A. LOMBARD, Judge.
 

 I,On appeal, defendant/appellant Brian Stephens challenges the sufficiency of the evidence to support his convictions for aggravated assault against a police officer in violation of La.Rev.Stat. 14:37.2 and for being a felon in possession of a firearm in violation of La.Rev.Stat. 14:95.1. After review of the record in light of the applicable law and arguments of the parties, the defendant’s convictions are affirmed and the matter is remanded back to the trial court for imposition of a fíne as mandated by La.Rev.Stat. 14:95.1(B).
 

 Relevant Facts and Procedural History
 

 The defendant, arrested in September 2007, was charged in separate bills of information in November 2007 with aggravated assault on a peace officer and for being a felon in possession of firearm. He pleaded not guilty on both charges and, after waiver of this right to a jury trial, the trial court consolidated the cases for trial, finding him guilty of both crimes on January 21, 2009. Shortly thereafter, the defendant’s motion for a new trial was denied and, after waiving all delays, he was sentenced to concurrent sentences of five years at hard labor for aggravated assault of a police officer and ten years at hard labor for being a felon in possession pof a firearm. The defendant appeals both convictions which, pursuant to his motion, are consolidated before this court.
 

 Applicable Law
 

 La.Rev.Stat. 14:37.2 defines aggravated assault on a peace officer as “an assault committed upon a peace officer who is acting in the course and scope of his duties with a firearm.” An assault is “is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.” La. Rev.Stat. 14:36. Thus, in order to convict a defendant of aggravated assault upon a peace officer with a firearm, the State must prove that the defendant (1) with a firearm, (2) attempted to commit a battery or intentionally placed a peace officer in reasonable apprehension of receiving a battery, (3) while the peace officer was acting in the course and scope of his duties.
 
 State v. Noil,
 
 08-278, p. 9 (La. App. 5 Cir. 10/28/08) 997 So.2d 621, 626.
 

 In order to establish the crime of possession of a firearm by a convicted felon, the State must prove the following elements: (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of the ten year statutory period of limitation; and (4) general intent to commit the offense. La.Rev.Stat. 14:95.1;
 
 State v. Husband,
 
 437 So.2d 269, 271 (La.1983);
 
 State v. Jones,
 
 544 So.2d 1294, 1295 (La.App. 4th Cir.1989).
 

 Pursuant to
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this “court must determine that the
 
 *989
 
 evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier |sof fact, is sufficient to support a factual conclusion.
 
 State v. Robinson,
 
 2002-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79;
 
 State v. Jones,
 
 97-2591, p. 7 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169.
 

 Discussion
 

 In his sole assignment of error, the defendant challenges the sufficiency of the evidence. The following evidence was adduced at trial.
 

 Officer Chad Perez of the New Orleans Police Department (NOPD) testified that on the evening of September 7, 2007, he and his supervisor, Sergeant Bryan Lam-pard, were in the vicinity of Annette Street and Claiborne Avenue after receiving information that a red pickup truck located in the 1600 block of Annette Street may have been involved in the shooting that occurred earlier that evening. When they arrived at the location, the officers observed two black males seated inside the truck and one black male on a bicycle adjacent to the driver’s side. The officers exited their vehicle and, as Officer Perez came around the rear of the truck, he observed the defendant exit the passenger side of the truck holding a grey semiautomatic handgun with an extended magazine protruding from the bottom of the grip. As he exited the truck, the defendant raised the weapon and pointed it directly at Officer Perez. Officer Perez withdrew his service weapon from its holster and ordered the defendant to drop the weapon. The defendant disregarded the command and continued to point his weapon at Officer Perez. Believing that his life was in danger, Officer Perez fired several rounds at the defendant. The defendant ran into a nearby alley with Officer Perez in pursuit and, as the police officer entered the alley, the defendant discharged two rounds in his direction. Officer Perez related that he observed the muzzle flash from the weapon and the defendant’s arm raise each of the two times the gun was fired in his direction. |4Officer Perez returned fire but lost sight of the defendant when he ran towards the rear of the house. Accordingly, Officer Perez got on the radio, contacted the dispatcher, and requested units to the area to assist in setting a perimeter. Officer Perez then ran to the intersection of Annette and North Robertson where he observed several citizens running from the front of a house in the 1600 block of North Robertson Street, were screaming and looking scared. Officer Perez spotted the defendant hiding behind a garbage can next to the residence but, upon seeing the officer, the defendant ran back into the block. At this point, Officer Perez advised the dispatcher that he had discharged his weapon and that the individual was armed with a Ruger semi-automatic handgun. Officer Perez explained that because Rug-er pistols have a distinctive matted grey color he was able to specifically identify the make of the weapon.
 

 After the perimeter was established, an NOPD canine unit arrived on the scene and began a search of the block. As the search was proceeding, the defendant appeared from a balcony of an abandoned building and announced that he had been shot. Officer Perez, along with several other officers, entered the building and secured the defendant. The defendant had sustained a single gunshot to his right leg.
 

 Officer Perez identified the gun, a Ruger semi-automatic pistol, and the forty-round
 
 *990
 
 capacity clip that were recovered at the scene. In addition, the State played the 911 tape from the incident and introduced into evidence the incident recall, a transcript of Officer Perez’s radio call to the dispatcher.
 

 Sergeant Lampard’s testimony corroborated that of Officer Perez. Specifically, Sergeant Lampard stated that on the evening in question he and his partner received information regarding an incident that happened earlier in the day ] 5that led them to a red truck parked in the 1600 block of North Claiborne. Upon seeing the truck, they exited their vehicle and approached it. There was a gentleman on a bicycle on the driver’s side and a subject in the driver’s seat of the truck. The defendant was a passenger in the truck. As the officers approached, the defendant exited the truck and began running toward an alley while pointing a large caliber handgun with an extended magazine at Officer Perez. Officer Perez fired several shots and ran towards the alley. Just prior to his entering the alley, two shots came from the alley towards Officer Perez. Officer Perez took cover at the corner of the residence and then went around to Annette Street in an attempt to cut the defendant off.
 

 Sergeant Lampard detained the subject on the bicycle and the driver of the truck. He broadcast a description of the defendant and set up a perimeter. It was a few minutes before he saw Officer Perez again. Once the perimeter was set up, they waited for a canine unit to arrive. While searching the block, they observed the defendant on a second story balcony. Sergeant Lampard assembled a team to enter the building and apprehended the defendant without incident. Prior to turning the defendant over to the homicide division, Sergeant Lampard advised the defendant of his rights and questioned him, specifically asking him where he threw the gun. According to Sergeant Lampard, the defendant initially responded “in the alley” but subsequently stated, “No, No, I threw it in the lot behind the house.”
 

 Sergeant Lampard asserted that he was part of the team that searched the area with the assistance of Agent Scanlan and her dog, Yahtzee, and that the gun was found along a chain link fence between the alley and the backyard.
 

 Sergeant Anthony Caprera testified that as a supervisor in the homicide division he was called to the scene because it was a police-involved shooting. [ (-According to Sergeant Caprera, when he arrived the defendant was in the ambulance with his leg bandaged. He spoke briefly to the defendant, informing him that a detective would meet him at the hospital for questioning and then turned his attention to processing the scene. Because night had fallen and the area was not particularly well lit, Sergeant Caprera obtained the assistance of a specialty trained dog who could detect guns, bullets, and casings, and who subsequently located the gun and a nearby cell phone.
 

 Sergeant Caprera returned to the scene the following day with two additional officers to look for additional evidence. They recovered a bullet fragment and several forty millimeter casings which were consistent with Officer Perez’s weapon but found no casings attributable to the nine millimeter Ruger. Although Sergeant Caprera requested that the crime lab process the gun for latent prints, none were recovered. A human hair found on the gun was submitted to the State Police crime lab for DNA analysis, but Sergeant Caprera testified that to his knowledge the test had not been performed.
 

 Officer Joseph Pollard, a latent print examiner with the criminal records division, testified that earlier that day he came
 
 *991
 
 to court and fingerprinted the defendant. He testified that the defendant’s fingerprints matched the fingerprints from a “cert pack” of a 2003 conviction for possession with intent to distribute cocaine of a person named Brian Stephens who had the same date of birth as the defendant.
 

 Officer Nicolas Gernon testified that on the night of the incident he met with the defendant at the Tulane Hospital’s emergency room and obtained his statement, which he recorded. The statement was played for the court. In his statement, the defendant admitted being in possession of a weapon; however, he identified his |7gun as being a .357 revolver. He stated several times that he did not fire the weapon and asked whether his hands could be tested to confirm that fact. Officer Ger-non confirmed that neither he nor, to his knowledge, any other officer performed a gun shot residue test.
 

 Harry Howard testified for the defense. He stated that on the night in question he was seated in a red Dodge Ram pickup truck along with the defendant. Damien, a mutual friend of theirs, was on a bicycle along the driver’s side of the vehicle. Mr. Howard stated that he observed the police approaching the vehicle and informed the defendant, who related that he had a warrant out for his arrest. When the police pulled up, the defendant jumped out of the truck and tried to run, and the police opened fire on him. The defendant ran to the alley located between 1688 and 1686 Annette Street. The officer who fired at the defendant ran up to the alley but no further. No shots were fired once the defendant entered the alley. Mr. Howard stated that the defendant did not have a gun but did have a cell phone with him. Mr. Howard identified the cell phone recovered at the scene as being the defendant’s cell phone.
 

 The defendant testified on his own behalf. He stated that he jumped out of the truck as soon as he saw the police and started running. He told his companion that there was a warrant out for his arrest. He stated that he was holding a cell phone in his hand. Stephens identified the cell phone that was recovered as being his own.
 

 As soon as he exited the vehicle, the police started shooting at him, and he ran down an alley while holding his hands over his head. He was shot in the leg but kept running until he reached a safe spot in an abandoned house where he wrapped his leg up. The defendant testified that he waited until he could see |8people on the street before surrendering. After he emerged on the balcony, the police ordered him to remove his shirt, and he complied. According to the defendant, after the police entered the building and handcuffed him they kicked him and used a taser on him while asking him where his gun was. The defendant told the officers that he did not have a gun.
 

 The defendant claimed that the police would not allow him to be treated by EMS but kept him in a police car as they continued to urge him to admit to having a gun. The defendant acknowledged that he gave the statement at the hospital that he had a weapon, but contended that he only gave the statement so that he would be treated. According to the defendant, he did not receive any treatment until after Detective Gernon left the hospital. The defendant denied shooting at anyone that night, asserting that he was not armed.
 

 On cross examination, the defendant admitted having two previous felony convictions, one for possession of crack cocaine and one for possession with intent to distribute crack cocaine. The defendant related that when he was apprehended by the police he was kicked so many times
 
 *992
 
 that he could not even count the number. He stated that one officer had his foot over his face and that they kicked him in the face as well.
 

 In rebuttal, the State called Dr. Stephen Mallerne who treated the defendant at Tulane University Medical Center. Dr. Mal-lerne stated that the defendant was treated for a gun shot wound to his right lower leg. From the best of his recollection and his review of the emergency room records, there were no signs of physical abuse. He noted that antibiotics were administered at 9:30 p.m. and that Vicodin was administered at 1:10 a.m. the next morning.
 

 |9The State recalled Detective Gernon who stated that, when interviewed, the defendant showed no signs of physical abuse other than the gunshot wound. Detective Gernon identified a booking photograph of the defendant from the night in question and stated that the photograph depicted how the defendant looked on the night he interviewed him.
 

 The defendant argues, however that the evidence is insufficient to support his convictions because the State did not introduce into evidence any fingerprints or DNA evidence from the hair recovered from the gun which link him to the gun, nor did the State introduce any evidence pertaining to whether the gun had been recently fired or whether any bullets were missing from the magazine. In addition, the defendant points out that no spent nine millimeter casings were recovered to indicate that the Ruger pistol that was found was fired at that location. Finally, the defendant notes that even though he requested that a test be performed, no test for gunshot residue was performed on him and, thus, no physical evidence was introduced at trial which links him to the weapon at issue.
 

 Unless it is clearly contrary to the evidence, the credibility decision of the trier of fact will not be disturbed on appeal,
 
 State v. Harris,
 
 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435, and, accordingly, under our standard of review, the police officers’ testimony which the trier of fact found credible is sufficient to establish the defendant’s possession of a weapon beyond a reasonable doubt even without physical or scientific evidence that conclusively establishes he possessed the Ruger semi-automatic pistol.
 
 See State v. Womack-Grey,
 
 99-0416, p. 17 (La.App. 4 Cir. 5/17/00), 764 So.2d 108, 119 (“If credible, the testimony of a single witness may establish the elements of a crime beyond a reasonable doubt.”). Moreover, Sergeant Lampard’s testimony substantively corroborated Officer | inPerez’s testimony and the testimony of the officers was not in irreconcilable conflict with the physical evidence. Accordingly, the State’s evidence establishing the common element to both crimes of possession of a firearm is constitutionally sufficient. The remaining requisite elements to support the aggravated assault on a peace officer conviction were established by the testimony of Officer Perez when he related that the defendant’s refusal to lower his weapon when so ordered, as well as when the defendant discharged the weapon from the alley, caused Officer Perez to fear for his life. The remaining requisite elements to support the felon in possession of a firearm were established through the testimony and evidence adduced by the State during the testimony of Officer Pollard. Accordingly, viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the crimes of aggravated assault on a police officer and possession of a firearm by a convicted felon were satisfied beyond a reasonable doubt.
 

 Errors Patent
 

 Our review of the record reveals two patent errors. First, the trial court
 
 *993
 
 sentenced the defendant under La.Rev. Stat. 14:95.1 only to imprisonment although that statute mandates that a person convicted of this offense shall be sentenced to imprisonment and “fined not less than one thousand dollars nor more than five thousand dollars.” La.Rev.Stat. 14:95.1(B). Accordingly, we must remand the matter to the trial court to rectify this omission.
 
 See State v. Williams,
 
 2003-0302 (La.App. 4 Cir. 10/6/03), 859 So.2d 751,
 
 following State v. Legett,
 
 2002-0153 (La.App. 4 Cir. 5/22/02), 819 So.2d 1104 and
 
 State v. Hall,
 
 2002-1098, pp. 5-6 (La. App. 4 Cir. 3/19/03), 843 So.2d 488.
 

 |nA second error patent in the sentence concerns the trial court’s failure to prohibit parole as mandated by La.Rev. Stat. 14:95.1. However, paragraph A of La.Rev.Stat. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court,
 
 State v. Williams,
 
 2000-1725, p. 10 (La.11/28/01), 800 So.2d 790, 798-799, and, accordingly, this Court need take no action to correct the trial court’s failure to specify that the defendant’s sentence be served without benefit of parole, probation or suspension of sentence because the correction is statutorily effected. La.Rev.Stat. 15:301.1(A).
 

 Conclusion
 

 In accordance with the foregoing, both convictions are affirmed. The matter is remanded for imposition of a fine in accordance with La.Rev.Stat. 14:95.1(B).
 

 AFFIRMED; REMANDED.