CLARENCE E. McMANUS, Judge.
12Pefendant, Charles A. Cummings, appeals his conviction and multiple offender adjudication finding him to be a fourth felony offender. For the reasons which follow, we affirm.

STATEMENT OF THE CASE

On January 26, 2009, the Jefferson Parish District Attorney charged the defendant, Charles A. Cummings, Jr., with one count of possession of a firearm by a person convicted of certain felonies, a violation of LSA-R.S. 14:95.1.[1] The defendant pleaded not guilty at arraignment.
The defendant filed various pretrial motions, including a motion to appoint a sanity commission. The motion to appoint a sanity commission urged that the defendant has a history of mental illness and was unable to assist counsel in preparation for trial due to his mental illness. The defendant was subsequently evaluated by two forensic psychiatrists, Dr. Rafael Alce-do and Dr. Richard RRichoux, both of whom concluded that the defendant was competent to proceed. Both the defense and State stipulated that if Drs. Alcedo and Richoux were called to testify at trial, they would testify as stated in their report. The report was introduced into evidence as a joint exhibit and the trial court found the defendant competent to proceed. The defendant also filed a motion to suppress evidence, which the trial court heard and denied on August 12, 2009.
At the hearing on the motion to suppress, Detective Kevin Treigle of the Ken-ner Police Department, testified that on December 3, 2008, Kenner Police took part in a controlled purchase of crack cocaine with a confidential informant at 247 Clemson Place, a high drug trafficking area. According to Detective Treigle, a confidential informant informed him that he had purchased crack cocaine from a man in a blue and white shirt. Approximately two hours later, Detective Treigle proceeded to Clemson Place in an “attempt to identify the suspect on the controlled purchase.” Detective Treigle located a man who was wearing a blue and white striped shirt. Det. Treigle testified that when he pulled up to the address, the man began to run.
The next afternoon, Detective Treigle returned to 247 Clemson Place with Sergeant Michael Cunningham and Detective Mark McCormick. As Detective Treigle turned into Clemson Place, he observed a black male in a blue and white striped shirt crouch behind a vehicle about 15 feet away. Detective Treigle testified that he recognized the man with the blue and white striped shirt as the defendant. Detective Treigle then exited the police unit and “approached” the defendant slowly, at which time the defendant “began to run southbound through the apartment complex.”
Detective Treigle immediately gave chase. He testified that the defendant jumped over several fences and ran through yards. In the middle of the chase, the [¿defendant dropped down to one knee and pulled a revolver from the waistband of his pants. Detective Treigle alerted the other officers who were assisting by yelling, “Gun, gun, gun, gun, gun.” The defendant pointed the gun at Detective Treigle but did not fire. Detective Treigle contemplated firing at the defendant, but ultimately chose not to.
The defendant then ran into a space between two buildings. Detective Treigle attempted to cut the defendant off. Even *391 tually, police subdued the defendant and recovered the revolver from a trash bin, but Detective Treigle did not participate in the defendant’s arrest. The next time Detective Treigle saw the defendant, he was in handcuffs.
On cross-examination, Detective Treigle admitted that he did not see the defendant engage in any hand-to-hand transactions or conduct any illegal activity. At the conclusion of Detective Treigle’s testimony and argument, the trial court denied the motion to suppress.
Trial then commenced. Detective Trei-gle was re-called to the witness stand. His testimony at trial largely mirrored that of his testimony at the hearing on the motion to suppress. Detective Treigle clarified that on the evening of December 3, 2008, he observed a confidential informant participate in a controlled buy of crack cocaine from a man wearing a blue and white striped shirt. He further clarified that at the time, he was approximately 100 yards away on the corner of Dartmouth and Clemson and that he could not see the seller’s face at that time.
Detective Treigle testified that on the afternoon of December 4, 2008, he and two other detectives patrolled the parking lot of 247 Clemson Place. Detective Treigle indicated that when they pulled into the parking lot, he observed a black male wearing a blue and white striped shirt (the defendant) and a Hispanic male. Detective Treigle added that when he and the other officers approached the |Bdefendant, he was standing behind a vehicle. After he parked his police vehicle, and as he was walking towards the front of his vehicle, Detective Treigle observed the defendant crouch behind the vehicle he was standing behind. Detective Treigle additionally clarified at trial that he saw the defendant wearing the same blue and white striped shirt on December 3, 2008, but would not have been able to identify the defendant on December 3, 2008.
Detective Treigle added at trial that, after the defendant fled, he lost sight of the defendant for approximately three minutes before he was apprehended. Detective Treigle indicated that the pistol was recovered from a garbage can directly in the middle between where the chase started and where the defendant was apprehended. Detective Treigle identified State’s Exhibit 14 as a photograph of the garbage can from which the revolver was recovered and State’s Exhibit 13 as a photograph of the revolver itself.
Detective Mark McCormick of the Ken-ner Police Department testified that on December 4, 2008, he was patrolling the area around Clemson Place with Detective Treigle and Sergeant Michael Cunningham. Detective McCormick observed the defendant with a chrome revolver in his hand on the afternoon of December 4, 2008, and identified two of the State’s exhibits as photographs of the revolver that he saw in the defendant’s hand. Detective McCormick also recovered two live shell casings and two spent shell casings that came from the revolver in question.
On cross-examination, Detective McCormick indicated that he did not witness the controlled buy on December 3, 2008, and had no knowledge as to whether the defendant had committed any illegal acts. He confirmed that when he and the other officers approached 247 Clemson Place, he saw a Hispanic male. Detective McCormick admitted that he did not see the defendant. Detective | (¡McCormick testified that he did not even know the defendant was present on the scene until he heard Detective Treigle yell “Gun!” He then looked in Detective Treigle’s direction and saw the defendant with a chrome revolver in his right hand.
*392 Detective McCormick then began his own foot pursuit but lost sight of the defendant. He was able to regain sight of the defendant approximately 15 or 20 seconds later. Detective McCormick was eventually able to apprehend the defendant. Detective Treigle recovered the weapon approximately two or three minutes later. Detective McCormick was aware that no fingerprints were discovered on the weapon.
Detective Sergeant Michael Cunningham of the Kenner Police Department confirmed that he and Detective Treigle were present when an informant made a controlled purchase of crack cocaine at 247 Clemson Place on December 3, 2008. The confidential informant subsequently gave officers a description of the defendant. According to Sergeant Cunningham, the informant also “said there was a Hispanic male who spoke perfect English “that was also in the parking lot that tried to sell to him but he didn’t make a purchase from him.”
The next day, Sergeant Cunningham, Detective Treigle, and Detective McCormick returned to Clemson Place with the intention of “identifying] either of the two.” As the officers pulled into the parking lot, Sergeant Cunningham testified that he noticed a Hispanic male standing near a building. Sergeant Cunningham exited his unit and approached the Hispanic male, and as he did so, he heard Detective Treigle yell “gun, gun, gun.” Sergeant Cunningham turned toward Detective Treigle and saw the defendant “coming up off of one knee and was holding a gun and was pointing it” in the vicinity of Detective Treigle and Detective McCormick.
17Sergeant Cunningham joined the pursuit and was eventually able to apprehend the defendant with Detective McCormick. The gun was recovered a “couple of minutes” later.
Officer Larry LaCrouts of the Kenner Police Department testified that, despite an attempt to do so, he was unable to obtain fingerprints from the revolver in this case.
At trial and at the multiple bill hearing, Aischa Prudhomme compared the defendant’s fingerprints to the fingerprint cards in Orleans Parish matter number 424-220 and in 24th Judicial District matter number 97-7621. She concluded that the same individual made the fingerprints in the previous matters.
At the conclusion of this testimony, the State rested. The defense rested without calling witnesses, however, the defense did introduce various exhibits into the record.
On August 13, 2009, the trial court found the defendant guilty as charged following the bench trial. On September 23, 2009, a motion in arrest of judgment and alternatively motion for new trial was filed by trial counsel and denied.
At that point, the defendant retained private counsel for his defense. The defendant’s new counsel filed a motion to reconsider motion for new trial and/or arrest of judgment and a new supplemental motion for new trial. The trial court denied the motion to reconsider new trial and marked the supplemental motion for new trial as moot. The trial court then sentenced the defendant to a term of imprisonment of 12 years “Department of Corrections” without benefit of parole, probation, or suspension of sentence.
The State immediately filed a multiple offender bill of information alleging the defendant to be a fourth felony offender. On June 16, 2010, the trial court adjudicated the defendant a fourth felony offender. The trial court resentenced the[sdefendant to a term of imprisonment of 30 years “in *393 the Department of Safety and Corrections,” to be served without benefit of probation, parole, or suspension of sentence.
Defendant now appeals his conviction and multiple offender adjudication. We affirm his conviction and adjudication as a fourth felony offender for the following reasons.

ASSIGNMENT OF ERROR NUMBER FOUR

In this assignment of error, the defendant contends that the trial court erred in not granting his motion for new trial and his motion to reconsider motion for new trial. The defendant contends that the trial court erred in denying these motions because the State failed to prove all elements of the crime beyond a reasonable doubt. More specifically, the defendant alleges in his brief that the evidence did not establish beyond a reasonable doubt that the firearm found in the garbage can was one he possessed for various reasons: (1)attempts to recover fingerprints from the revolver were unsuccessful; (2) none of the officers actually observed the defendant throw the revolver into the garbage bin; (3) officers failed to obtain surveillance tapes; (4) the police made no attempt to ascertain with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives who owned the revolver; and (5) he was not tested for gunpowder residue.
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, a reviewing court must first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). Accordingly, this Court will address the sufficiency issue first.
It is well established that the constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the [ slight most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
“Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. However, this requirement of LSA-R.S. 15:438 does not establish a standard that is separate from the Jackson standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. Id. (citation omitted).
On appeal, the reviewing court does not determine if another possible hypothesis suggested by the defendant could afford *394 an exculpatory explanation of the events. Instead, the appellate court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt | inbeyond a reasonable doubt under the Jackson standard. State v. Durand, 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1545 (La.1/25/08), 973 So.2d 753.
In the instant case, defendant was convicted of possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. In order to convict a person of violating LSA-R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense. State v. Watson, 08-214 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
There are other cases similar to this current matter. In State v. Stephens, 2009-0631 (La.App. 4 Cir. 11/24/09), 27 So.3d 987, a New Orleans Police Department officer and his supervisor were patrolling in an area where they had received information that a shooting may have occurred. When they approached a red pickup truck alleged to have been involved in the shooting, the defendant exited the truck holding a grey semiautomatic handgun with an extended magazine. Id. at 989. After the officer fired several rounds at the defendant, the defendant ran into a nearby alley. The officer gave chase, lost sight of the defendant, contacted his dispatcher, and requested a perimeter. Id.
Eventually, the defendant emerged from a nearby abandoned building announcing he had been shot. Id. One of the arresting officers noted that the defendant said he disposed of the gun “in the alley” but subsequently stated, “No, No, I threw it in the lot behind the house;” the defendant contended at trial that he had been unarmed and had not told the officers that he had a gun. Id. at 989-91. The pistol was recovered between the alley the defendant fled to and a backyard abutting the alley. Id. at 990. In addition, at trial, the officer who had initially |ngiven chase identified the pistol and forty-round magazine recovered from the scene. Id,, at 989-90. The defendant was convicted of being a felon in possession of a firearm.
On appeal, the defendant challenged the sufficiency of the evidence. The defendant contended that the evidence was insufficient to convict because the State did not introduce into evidence any fingerprints or any other physical evidence at trial linking him to the weapon at issue. No latent prints were recovered from the pistol. Id. at 991. The defendant also noted that even though he requested that a test be performed, no test for gunshot residue was performed on him. Id. at 992.
The Fourth Circuit affirmed, reasoning that “the police officers’ testimony which the trier of fact found credible is sufficient to establish the defendant’s possession of a weapon beyond a reasonable doubt even without physical or scientific evidence that conclusively establishes he possessed the ... pistol.” Id.
Similarly, in this case, Sergeant Cunningham, Detective Treigle, and Detective McCormick all testified that they saw the defendant with a chrome revolver and a black handle in his hand while fleeing from police. A chrome revolver with a black handle was recovered from a trash bin after the defendant had been apprehended. Detective Treigle, who had the best view of the revolver, identified the revolver recovered from the trash bin as *395 the one that the defendant pointed at him. Testimony established that the trash bin was directly in the route between where the chase started and where the defendant was apprehended. It is true that in the instant case, no latent fingerprints were lifted from the revolver and that the defendant was not tested for powder burns. However, as noted in Stephens, supra, such physical evidence is not necessarily required to establish the defendant’s possession of a firearm beyond a reasonable doubt. The trier of fact evidently chose to credit the testimony of Sergeant Cunningham, Detective |12Treigle, and Detective McCormick. In addition, we note that the defendant’s argument that he should receive a new trial because officers never ascertained ownership of the weapon is wholly meritless; ownership and possession are two different legal concepts. In light of the foregoing, we find that the evidence was sufficient under the Jackson standard to prove that the defendant had possession of the revolver. Accordingly, we find that this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant contends that the trial court erred in admitting the joint report of Dr. Salcedo and Dr. Richoux. More specifically, the defendant contends that the report “contained no indication that the experts took any steps whatsoever to explore those facts in more detail or to examine the defendant more than one brief time.”
A criminal defendant has a constitutional right not to be tried while legally incompetent. Medina v. California, 505 U.S. 437, 449, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353, 365-66 (1992) (quoting Drope v. Missouri, 420 U.S. 162, 173, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 114 (1975)). A state must observe procedures adequate to protect a defendant’s right not to be tried while incompetent, and its failure to do so deprives the defendant of his due process right to a fair trial. Id. (quoting Drope, 420 U.S. at 172, 95 S.Ct. at 904, 43 L.Ed.2d at 113)
Louisiana’s statutory scheme for detecting mental incapacity jealously guards a defendant’s right to a fair trial. State v. Rogers, 419 So.2d 840, 843 (La.1982). In Louisiana, “[mjental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” LSA-C.Cr.P. art. 641. Louisiana law also imposes a legal presumption that a defendant is sane and Incompetent to proceed. State v. Carmouche, 01-0405 (La.05/14/02), 872 So.2d 1020, 1041.
In State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003), the Louisiana Supreme Court stated:
Simply because a defendant’s capacity to proceed is called into question by formal motion does not mandate a mental examination be ordered and a sanity commission be appointed ... Appointing a sanity commission is neither a perfunctory matter nor a ministerial duty of the trial court; it is not guaranteed to every accused in every case ... Given the presumption of sanity, before the court is required to appoint a sanity commission, the defendant must establish by a preponderance of the evidence that reasonable grounds exist to doubt his mental capacity to proceed ... A reviewing court owes the trial court’s determination on these matters great weight, and the trial court’s ruling will not be dis *396 turbed on appeal absent a clear abuse of discretion.
(Citations omitted).
Although the Code of Criminal Procedure mandates a contradictory hearing, there is no prohibition against waiver of a full hearing or stipulation to submission on the competency issue based on uncontro-verted doctor’s reports. See, e.g., State v. Darnell, 43,048 (La.App. 2 Cir. 8/13/08), 988 So.2d 870, 877, writ not considered, 2008-2258 (La.5/1/09), 6 So.3d 803 (“[t]he supplemental record clearly reveals that a mental capacity determination had in fact been made in November 2006 and that the trial court explicitly afforded the defense the opportunity to conduct a contradictory hearing. Although a defendant cannot waive the requirement of a specific mental capacity finding once the issue is raised, he can submit to such a determination based on the sanity commission reports. That is exactly what happened in this case.”) (citation omitted).
In State v. Dauzat, 08-460 (La.App. 5 Cir. 1/13/09), 8 So.3d 609, defense counsel filed a motion to determine the defendant’s competency to stand trial. Id. at 612. The trial court appointed experts to evaluate the defendant and both experts 114concluded that the defendant was able to assist in his defense and proceed to trial. The defense stipulated to these findings. Id. At that time, counsel stated on the record that the defendant had been found to be competent and that he wished to plead guilty. The record contained no indication that the trial court formally ruled that the defendant was competent to stand trial.
On appeal, this Court noted:
In this case, the defendant requested a sanity commission. His motion was granted and two mental health professionals, a psychologist and a psychiatrist, examined him. In their expert opinion, the defendant was competent to proceed to trial. The defendant stipulated to these reports, thus obviating the need for a contradictory hearing ...
While the better practice would have been for the trial court to expressly rule on the sanity motion and to state for the record that the defendant was competent to stand trial, it appears that the defendant waived his right to the contradictory hearing mandated by LSA-C.Cr.P. art. 647.
Id. at 613.
Similarly, in this case, the defendant filed a motion for a sanity commission. Two forensic psychiatrists determined that the defendant was competent to proceed to trial. The defendant stipulated to those determinations. In this case, as was not the case in Dauzat, the trial court utilized the “better practice” and expressly ruled that the defendant was competent to proceed. The defendant cannot complain on appeal about the lack of a contradictory sanity hearing after he agreed to submission on the competency issue based on the sanity commission reports, especially considering that he did not object to further proceedings until appeal. See State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983) (affirming trial court’s capacity determination made in off-the-record conference with parties without conducting contradictory hearing).
11BIn his brief, the defendant makes no effective argument as to why this Court should not rule that he waived his right to further investigation of Drs. Alcedo and Richoux. The defendant asserts that “this Court is urged to note that defense counsel was appointed and the public defender’s office has a well-known meager budget for employing outside independent experts.” That may be the case, however, it cannot *397 overcome jurisprudential rules established by the Louisiana Supreme Court and the courts of appeal. Therefore, we find that the defendant waived his right to question Drs. Alcedo and Richoux or to hold a contradictory hearing. Accordingly, this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. More specifically, the defendant contends “it is clear that [the defendant’s] flight from the approaching plain clothes officer was the real reason that that officer initiated the chase. Thus, the initial attempt at detention followed by the ultimate chase and apprehension of the defendant was illegal and any evidence secured as a result of that ... must be suppressed.”
The Fourth Amendment to the United States Constitution and Louisiana Constitution Article I, Section 5 protect individuals from unreasonable searches and seizures. Evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. State v. Harris, 00-1930 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 801-02. The exclusionary rale bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. Wang Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963); State v. Hollimon, 04-1195 (La.App. 5 Cir. 3/29/05), 900 So.2d 999, 1003.
| j nPolice officers are permitted to conduct warrantless “investigatory stops” upon a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 9-10, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The test for “reasonable suspicion” is whether the police officer had sufficient knowledge of the facts and circumstances to justify an infringement upon the individual’s right to be free from governmental interference. See, e.g., State v. Melancon, 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 228, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297. If the police officer did not have reasonable suspicion to conduct the investigatory stop, the stop is illegal and the evidence seized from it must be suppressed. Id. at 229; Brawn v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049; State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101. The determination of reasonable grounds for an investigatory stop, or probable cause for arrest, does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Mitchell, 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151, 1155. A trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
The Louisiana Supreme Court has consistently held that under circumstances similar to this case, a police officer’s investigatory stop was justified. In State v. Benjamin, 96-2781 (La.App. 4 Cir. 11/26/97), 703 So.2d 192, writ granted, 1997-3065 (La.4/24/98), 717 So.2d 1152, reversed, 1997-3065 (La.12/1/98), 722 So.2d 988, officers were on routine patrol when *398 they encountered the defendant, who was walking down the street. As the officers pulled alongside the defendant, he grabbed at his waistband and began running. Id. at 194. Believing the defendant was carrying a weapon or contraband, the officers chased and eventually captured the defendant and retrieved a gun, which he had abandoned during the chase. Id. The trial court denied the defendant’s motion to suppress the gun and a statement he made at his arrest, but the Fourth Circuit court reversed. The Fourth Circuit first noted that the actions of the officers constituted an imminent stop, for which they needed reasonable suspicion; the court further found reasonable suspicion was lacking. Id. at 196. The Fourth Circuit noted that the officers who chased the defendant did so only because he began running and had grabbed at his waistband. The Fourth Circuit pointed out that the officers had no tip involving the defendant or any drug activity at that time, nor did they see any weapon or suspected drug activity on the defendant’s part. Id. Having found there was an imminent stop and that the officers did not have reasonable suspicion to support the stop, the Fourth Circuit suppressed the evidence abandoned by the defendant. Id. at 197.
However, the supreme court reversed, finding there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers. The supreme court stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989 (citations omitted).
|In State v. Alvarez, 2009-0328 (La.3/16/10), 31 So.3d 1022 (per curiam), the Louisiana Supreme Court reversed a ruling rendered by this Court. The Louisiana Supreme Court recited the facts of that case as follows:
Evidence presented at both the suppression hearing and at trial established that during the course of a traffic stop conducted at night in the Woodmere Subdivision in Jefferson Parish, described as a “high crime area,” police officers found their attention drawn to defendant as he observed the scene while standing between two apartment buildings and behaved in what appeared to the officers a nervous and erratic manner. When two officers approached defendant to ask him some questions after he balked at their initial requests that he come over to them, defendant turned and ran through the alleyway between the two apartment buildings. The officers gave chase. During the pursuit, defendant removed a gun from his waistband and discarded in the weapon in some bushes. He then ran into an apartment building and slammed the door shut. The pursuing officers kicked in the door, placed defendant under arrest, and in a search incident to that arrest removed a small bag containing rock cocaine from his pants pocket.
Id. at 1023.
This Court concluded that “the officers had no reasonable suspicion to justify an investigatory stop. The officers did not articulate any basis for them to believe that the defendant was committing, had committed, or was about to commit a crime.” State v. Alvarez, 08-558 (La.App. 5 Cir. 1/13/09), 8 So.3d 50, 55-56, reversed, *399 State v. Alvarez, 2009-0328 (La.3/16/10), 31 So.3d 1022 (per curiam). The supreme court disagreed with this Court’s assessment, reasoning, “[t]he totality of the circumstances with which the officers were presented — the lateness of the hour, the ‘high crime’ nature of the area, the furtive behavior of the defendant at an unrelated traffic stop during which he was attempting to evade the officers’ sight and watch their actions — aroused the officers’ suspicions and caused them concern for their safety. Adding to those factors defendant’s unprovoked flight, the officers had the requisite minimal level of objective justification, i.e., reasonable suspicion, to investigate further and to initiate an investigatory stop.” Alvarez, 31 So.3d at 1024.
l1flThe facts of this case are similar to Benjamin and Alvarez. In Benjamin, the defendant grabbed his waistband and fled at the sight at police. In this case, the defendant ducked behind a car and fled at the sight of police. In both cases, the respective defendants disposed of firearms while fleeing from police. The Louisiana Supreme Court noted in Benjamin that police officers “observed that Defendant ... began to run away holding his waistband as if he were supporting a weapon or contraband. These objective facts known to the officers were sufficient to raise a reasonable suspicion that Defendant either was engaging or was about to engage in criminal activity.” Id. In this case, the defendant did not reach for his waistband, however, three police officers observed the defendant brandish a weapon after he began fleeing. Moreover, in this case, the police had additional objective criteria to raise a reasonable suspicion that crime was afoot, the defendant’s presence in a high-crime area and the fact that an informant participated in a controlled buy of crack cocaine from a man wearing the same shirt the defendant wore the next day.
We conclude that the officers had reasonable suspicion to stop the defendant based on the Louisiana Supreme Court’s decisions in Benjamin and Alvarez. Thus, we find the trial court correctly denied the motion to suppress and we find that this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THREE

In this assignment of error, the defendant further contends that the trial court erred in trying the defendant in a bench trial without obtaining a valid waiver to the right of trial by jury. The defendant contends that “A careful examination of the entire record of this proceeding reveals that there is no evidence whatsoever of any knowing and intelligent waiver of a jury by [the defendant]. On the contrary, there is no discussion whatsoever of the right to a jury.”
|2nThe State admits that the “record submitted by defense counsel does not show that the defendant waived counsel.” However, the State contends that it “secured a transcript from the Court Reporter in this matter which, pursuant to URCA 2-1.12, is contained in a specially marked envelope and attached as exhibit # 1.”
A defendant in a non-capital case may waive his right to a jury trial provided he knowingly and intelligently does so. LSA-C.Cr.P. art. 780(A). “The waiver must be express and is never presumed.” State v. Ruffin, 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 633, writ denied, 03-3473 (La.12/10/04), 888 So.2d 831. Although it is preferred for the trial judge to advise the defendant personally on the record of his right to a jury trial and have the defendant waive the right personally on the record, the Louisiana Supreme Court has refused to mandate this method as an absolute rule. Id.
*400 While the trial judge must determine whether the defendant’s jury trial waiver is knowing and intelligent, that determination does not require a “Boykin[2]-like” colloquy. Id. A trial judge is not obligated to conduct a personal colloquy inquiring into the defendant’s educational background, literacy, and work history. Where no valid jury waiver is found in the record, Louisiana’s appellate courts have traditionally set aside the defendant’s conviction and remanded for a new trial. State v. Williams, 404 So.2d 954, 956 (La.1981).
In his brief, the defendant makes no specific argument as to why this Court should reverse his conviction based on this assignment of error, other than the fact that the transcript was not originally part of the record.
_[2jThe State’s attached “Exhibit 1” indicates that the following waiver colloquy took place on August 12, 2009.
THE COURT:
With Mr. Cummings being sworn, Mr. Cummings, is your address 3105 Dawson Street, Kenner, sir?
THE DEFENDANT:
Yes, sir.
THE COURT:
Okay. Mr. Cummings, did you hear the recitation by your attorney, Mr. Goetz, with regard to your decision to chose a judge trial instead of a jury trial?
THE DEFENDANT:
Yes, sir.
THE COURT:
You understand that you have the right to have a trial by a judge or a jury in Number 9 on today’s docket, that’s 09-373. That’s where you’re charged with a violation of RS 14.95.1, a convicted felon with a weapon. That’s a felony matter, so you’re entitled to a trial by a judge or a jury. Do you understand that, sir?
THE DEFENDANT:
Yes, sir.
THE COURT:
And you’ve had a discussion with your attorney and it’s your decision to select a judge trial in that matter. Is that correct, sir?
THE DEFENDANT:
Yes, sir.
THE COURT:
You also understand that Matter Number 09-374, which is Number 10 on today’s docket, you’re charged with a violation of RS 14:108(A), resisting an officer, which is a misdemeanor. You’re only entitled to a judge trial on that matter. You understand that.
L,THE DEFENDANT:
Yes, sir.
THE COURT:
However, in the felony matter, 09-373, it’s your decision to select a judge trial, correct?
THE DEFENDANT:
Yes, sir.
THE COURT:
Thank you. We’re going to resume the ...
MR. PACIERA (prosecutor):
May I ask him just a couple of questions, Judge?
THE COURT:
What are the questions?
MR. PACIERA:
I want to be sure that he understands that his jury is a jury of 12, ten of whom must concur and that if he *401 elects to go to trial by a judge, it’s only one person that makes the decision, not ten out of 12.
THE COURT:
Mr. Goetz just put that on the record, but out of an abundance of caution, I’ll ask it again. You understand that, sir, that in a judge trial only the judge makes the decision as to whether you’re guilty or not. You understand that, sir?
THE DEFENDANT:
Yes, sir.
THE COURT:
And with regard to a jury trial, ten of the 12 must concur. You understand that?
THE DEFENDANT:
Yes, sir.
ImTHE COURT:
Okay. And you still wish to select a judge trial, correct?
THE DEFENDANT:
Yes, sir.
THE COURT:
All right. Thank you. The Court is going to resume this matter at 12:30 in order to have the witnesses present for the motions and for trial.
MR. GOETZ (defense counsel):
Thank you, Your Honor.
THE COURT:
Court will resume at 12:30.
MR. PACIERA:
Thank you, Judge.
THE COURT:
Thank you.
The trial court questioned the defendant as to whether he wanted to waive his constitutional right to trial by jury. The trial court asked the defendant if he understood he had the right to trial by jury and that a jury need not necessarily vote unanimously to convict him. The defendant responded affirmatively. The record indicates that defense counsel discussed the right to trial by jury with the defendant. In addition, we note that the defendant’s testimony later at trial evidences that he was aware and alert, and able to make appropriate responses to the judge’s questions regarding trial by jury. For example, the following colloquy took place when defense counsel indicated that the defendant would not testify in his own defense:
THE COURT:
^Mr. Cummings, stand please momentarily. I want you to understand that this is a judge trial. As in any other trial, you have the right to testify on your own behalf. Do you understand that, sir?
THE DEFENDANT:
Yes, sir.
THE COURT:
You also understand that it’s your decision whether or not you wish to testify in this trial. Do you understand that, sir?
THE DEFENDANT:
Yes, sir.
Furthermore, the record indicates that the defendant has previous experience as an accused in several prior criminal proceedings. We find that the defendant in this case waived his right to a jury trial in a knowing and intelligent fashion. Therefore, we find that this assignment of error has no merit and the trial court correctly proceeded with a bench trial after defendant waived his right to a jury trial.

ASSIGNMENT OF ERROR NUMBER FIVE

In this assignment of error, the defendant contends that the trial court erred in *402 adjudicating him a fourth felony offender. The defendant challenges two of his predicate felony convictions. The defendant contends that the State presented insufficient evidence to prove that he was convicted in Orleans Parish matter number 424-220 because there is no evidence of a guilty plea colloquy and because there does not appear to be any evidence in the record that he was advised of the time within which to file an appeal or the time within which to file for post-conviction relief. The defendant also contends that the State presented insufficient evidence to prove that he was convicted in 24th Judicial District Court matter number 97-7621 because is no evidence in the record that he was advised of the | mtime within which to file an appeal or the time within which to file for post-conviction relief.
 In order to prove that a defendant is a habitual offender, the State must establish by competent evidence the defendant’s prior felony convictions, and that defendant is the same person who was convicted of the prior felonies. State v. Jenkins, 07-586 (La.App. 5 Cir. 1/22/08), 977 So.2d 142, 146. The Habitual Offender Law, LSA-R.S. 15:529.1, does not require the State to use a specific type of evidence in order to carry its burden of proof. Id. at 147. The defendant’s prior convictions may be proven by any competent evidence. Id. The State may meet its burden of proof by various means including the testimony of witnesses to prior crimes, expert testimony, matching fingerprints of the defendant with those in the record of prior convictions, or photographs contained in a duly-authenticated record. Id. at 146.
When the defendant’s habitual offender status is based on guilty pleas in the predicate convictions, the State has the burden of proving the existence of the defendant’s guilty pleas and that the defendant was represented by counsel when the guilty pleas were taken. Id. at 147. See also State v. Shelton, 621 So.2d 769, 774-77 (La.1993). If the State meets its burden of proof, then the burden shifts to the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity. Id. If the defendant meets the burden, then the burden shifts back to the State to prove the constitutionality of the plea by producing a perfect transcript, which shows that the defendant’s waiver of his Boykin rights was voluntary, informed, and express. Jenkins, 977 So.2d at 147. If the State produces anything less than a perfect transcript, such as a guilty plea form, minute entry, or imperfect transcript, the trial judge must weigh the evidence 12r,to determine whether the defendant’s prior plea was both knowing and voluntary. Id.
In State v. Nuccio, 454 So.2d 93 (La.1984), the Louisiana Supreme Court made the broad assertion that a valid guilty plea under Boykin requires only that a defendant be informed of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. “Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions.” Id. at 104. In State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158, the Louisiana Supreme Court further found that it had never extended the core Boykin constitutional requirements to include advice with respect to sentencing. Id.; citing Nuccio, 454 So.2d at 104. The Louisiana Supreme Court found that there was no reason to find that the legislature did not intend for LSA-C.Cr.P. art. 921 to apply to the trial judge’s failure to inform a defendant of the mandatory minimum sentences or the enhanced penalties for subsequent offenses. Occasionally, some circuits have deter *403 mined that other rights should apply to the Boykin triad. See, e.g., State v. Hill, 30,-552 (La.App. 2 Cir. 5/13/98), 714 So.2d 814, (“[t]his court has consistently followed [State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982) ] and vacated the plea when the record shows that the defendant was not informed of the sentencing range and of the ‘without benefit’ provision.”).
The State introduced numerous pieces of evidence in support of the multiple bill. With respect to the Orleans Parish matter, the State introduced a waiver of rights form, an arrest register with fingerprints, a minute entry indicating that the defendant pleaded guilty to unauthorized use of a movable, and the bill of information. In the waiver of rights form, the defendant indicated by his initials that he understood he was waiving his right against self-incrimination, that he ^understood he had a right to trial by judge or jury, and that he was waiving the right to confront his accusers. The defendant further indicated by his initials that the “Judge has addressed me personally as to all of these matters and he has given me the opportunity to make any statement I desire.” The form is signed by the judge and the defendant’s attorney. The minute entry indicates that the defendant pleaded guilty to unauthorized use of a movable. Ms. Prud-homme matched the fingerprints on the arrest register to the defendant’s fingerprints taken in this matter and initialed the form.
With respect to the Jefferson Parish matter, the State introduced a waiver of rights form, the bill of information, fingerprints, and relevant court minutes. In the waiver of rights forms, the defendant indicated by his initials that he was waiving the right to “a trial by judge or jury,” the right to testify at trial or to exercise his Fifth Amendment right not to testify, to a trial by jury, and to confront his accusers. The defendant also indicated by his initials that he “understood all the possible legal consequences of pleading guilty explained to me by my attorney and by the Court.” The form is signed by the defense attorney and the trial judge. The minutes indicate that the defendant pleaded guilty to theft and receiving stolen things on June 2, 1998. Ms. Prudhomme matched the fingerprints to the defendant’s fingerprints taken in this matter and initialed the form.
Thus, we find that the State met its initial burden of proving the existence of the defendant’s guilty pleas and that the defendant was represented by counsel when the guilty pleas were taken. See by analogy State v. Dunn, 390 So.2d 525 (La.1980) (holding that the record contained a sufficient affirmative showing of a knowing and express waiver where the record contained a transcript of the plea colloquy indicating an explicit waiver of two of the Boykin rights and a plea ofj^guilty form signed by the defendant, his attorney, and the judge which contained an express waiver, initialed by defendant, of the third right).
Further, we find that the defendant cannot meet his burden of producing affirmative evidence of an infringement of his rights or a procedural irregularity. The defendant complains that in one of his predicate offenses, the State did not produce a guilty plea colloquy. While it is preferable for the trial judge to conduct a colloquy to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea. State v. Halsell, 403 So.2d 688, 690 (La.1981); State v. Nuccio, supra. Moreover, a guilty plea colloquy has never been held to be indispensable to proving a prior guilty plea. See also Shelton, 621 So.2d at 777 (“We have also held the State has met its burden of proving a prior guilty plea in *404 an [sic] habitual offender hearing where it submitted a very general minute entry and a well-executed plea of guilty form”).
The defendant further complains that he was not advised of the time within which to file an appeal or the time within which to seek post-conviction relief. However, the Louisiana courts of appeal have resisted implementing a rule declaidng invalid guilty pleas in which the trial judge fails to inform the defendant of his right to judicial review of a trial conviction. See, e.g., State v. Tuesno, 455 So.2d 1292, 1293-94 (La.App. 4 Cir.1984); State v. Smith, 97-2849 (La.App. 1st Cir.11/6/98), 722 So.2d 1048, 1049. Given the Nuccio and Guzman rule that Boykin requires only that a defendant be informed of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers, we find that the defendant’s complaint has no merit and we find the State met its burden of proving the predicate offenses. In both predicate offenses complained of by the defendant, the State introduced waiver of rights forms wherein the defendant 12flindicated he was waiving each of the Boykin triad of rights. In both forms, the defendant indicated that the trial judge informed him of his rights and both forms were signed by defense counsel and the trial judge. The State also submitted certified minute entries indicating that the defendant pleaded guilty to the predicate offenses and fingerprint cards that an expert matched. Further, the defendant has failed to show that his rights were infringed. Accordingly, we find that this assignment of error has no merit and the trial court correctly found defendant to be a fourth felony offender.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
First, the trial court failed to observe the 24-hour delay between denial of the defendant’s motion to reconsider new trial and/or arrest of judgment and imposition of the original sentence, as required by LSA-C.Cr.P. art. 873. The record does not indicate that the defendant waived the delay. Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, his sentence must be vacated and the case remanded for re-sentencing. State v. Jones, 07-271 (La.App. 5 Cir. 10/30/07), 970 So.2d 1143, 1149. However, when the original sentence has been set aside in a habitual offender proceeding, as was the case here, the failure to observe the twenty-four hour delay is harmless. State v. McCloud, 04-1112 (La.App. 5 Cir. 3/29/05), 901 So.2d 498, 505, writ denied, 05-1450 (La.1/13/06), 920 So.2d 235. Therefore, no corrective action is necessary.
Next, when sentencing the defendant on the original conviction, the trial court sentenced the defendant to a term of imprisonment of “twelve years, Department of Corrections.” The trial court failed to indicate that the sentence lRn“shall be [served] at hard labor” as required by LSA-R.S. 14:95.1(B). In State v. Vance, 06-452 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, 109, n. 3, writ denied 07-0152 (La.9/28/07), 964 So.2d 351, this Court found under similar circumstances in an armed robbery case that it was not necessary to remand for resentencing, as only individuals actually sentenced to death or confinement at hard labor shall be confined to the Department of Corrections. In addition, the trial court sentenced the defendant pursuant to a multiple offender bill of information, thus essentially mooting the original 12-year sentence. See by *405 analogy State v. Jenkins, 07-428 (La.App. 5 Cir. 10/30/07), 970 So.2d 1166, 1170, writ denied, 07-2243 (La.5/30/08), 983 So.2d 895. Thus, no corrective action on the original sentence is necessary.
Third, when resentencing the defendant on the multiple offender bill of information, the trial court sentenced the defendant to a term of imprisonment of “thirty years in the Department of Safety and Corrections.” For the reason aforementioned, we need not take corrective action on this patent error.
Fourth, on the original sentence, the defendant was not fully advised of his right to seek post-conviction relief. LSA-C.Cr.P. art. 930.8 provides that a defendant has two years from the date “the judgment of conviction and sentence has become final” within which to file an application for post-conviction relief. At the sentencing hearing on the original sentence, the following colloquy took place:
MR. PACIERA:
Before I file a multiple bill, which I have in my hand, Your Honor, do you want to advise [the defendant] of his time delays for filing appeal, etcetra?
THE COURT:
He has two years from the date that the sentence becomes final, thirty days to appeal the sentence and I have given him credit for time served in these matters.
|S]The trial court failed to explicitly state “post-conviction relief’ when mentioning the two-year prescriptive period. In addition, this Court has consistently held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596. However, no corrective action is necessary since the defendant was properly advised of the time limitations of LSA-C.Cr.P. art. 930.8 when he was resentenced on the multiple bill. State v. Anthony, 07-204 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219, 1227, writ denied, 2008-0338 (La.1/16/09), 998 So.2d 98 (remanding for proper advisement under LSA-C.Cr.P. art. 930.8 when the defendant “did not receive a complete advisal of the prescriptive period for filing for post-conviction relief at either the original sentencing or the habitual offender sentencing hearings.”).
Fifth, it is also noted that the original commitmenVminute entry and the commitment/minute entry on the multiple bill differ in the following respects from the transcript on the original sentence and the transcript on the enhanced sentence:
(1) The original commitmenVminute entry reflects that the trial judge sentenced defendant to “imprisonment at hard labor for a term of 12 years” while the transcript indicates that the defendant was sentenced to the “Department of Corrections.”
(2) The original commitmenVminute entry reflects that the trial judge informed the defendant that he “has ... two (2) years after judgement [sic] of conviction and sentence has become final to seek post-conviction relief’ while, as aforementioned, the transcript does not so reflect.
(3) The commitment/minute entry on the multiple bill reflects that the trial judge sentenced defendant to “imprisonment at hard labor for a term of 30 years” while the transcript indicates that the defendant was sentenced to the “Department of Corrections.”
(4) The commitment/minute entry on the multiple bill indicates that the defendant would receive credit for time served, however, the transcript does not so indicate.
*406 IspThe transcripts prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). However, we will not take corrective action on (1) and (3) based on the discussion above wherein this Court has deemed it unnecessary to remand to correct the error. We will take no corrective action on (2) because the defendant was properly advised of the prescriptive period for filing for post-conviction relief when he was sentenced on the multiple offender bill of information. And finally, we will take no corrective action on (4) because LSA-C.Cr.P. art. 880 makes credit for time served self-operating even on a silent record. State v. McCorkle, 97-966 (La.App. 5 Cir.2/25/98), 708 So.2d 1212, 1219.
Finally, we also note that the trial court did not explicitly vacate the defendant’s original sentence prior to resentenc-ing him as a multiple offender. After the trial court sentenced the defendant as a fourth felony offender, he stated “The previous sentence is set aside.” However, we need not take corrective action. In State v. Davis, 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, this Court followed the dictates of State v. Mayer, 1999-3124 (La.3/31/00), 760 So.2d 309. In Mayer, the Louisiana Supreme Court found that vacation of the habitual offender sentence was not necessary where the transcript failed to reflect the trial court vacated the previously imposed sentence before imposing the habitual offender sentence. The court reasoned that the substantial rights of the defendant were protected since the commitment/minute entry “reflect[ed] that the trial judge vacated the defendant’s original sentence and thereby eliminated any possible confusion as to the terms of the defendant’s confinement.” Id. at 310. Similarly, in this case, the commitment/minute entry reflects that the trial court vacated the defendant’s original sentence before resentencing him on the multiple bill. Therefore, we conclude that the rights of the defendant were not violated.
| ^Accordingly, we affirm defendant’s conviction of possession of a firearm by a person convicted of certain felonies and the trial court’s adjudication as a fourth felony offender. Further, we affirm defendant’s enhanced sentence of thirty years.

AFFIRMED

. The defendant was also charged in a separate bill of information with resisting an officer for his actions during this course of conduct. That offense, a misdemeanor, is not at issue here.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).